## GEORGE PENFIELD *vs.* GEORGE O. PENFIELD.

The petitioner, an old man and broken down in health, conveyed his homestead to the respondent, his son, on a parol agreement that he should give the petitioner a home and support at the house during his life, a consideration operating on his mind and stated at the time being the fact that the respondent had for several years taken care of the property and expended money on it and for the family support. For a few months the petitioner was supported by the son, but a quarrel arising, the son ceased to furnish any adequate or comfortable support. Held that equity would compel a reconveyance by the son.

The respondent while he held the property had paid out a small sum in taxes and interest on a mortgage. Held that in view of his possession and use of the property, a reconveyance should be decreed without requiring the petitioner to re-imburse him.

BILL IN EQUITY to compel the re-conveyance of certain real estate; brought to the Superior Court in Fairfield County. The following facts were found by a committee.

About the last of February, 1870, a minor son of the petitioner was prosecuted for an assault and battery on one Warren, and was found guilty and fined. In the latter part of March following, a son of Warren wrote to the petitioner, representing that his father was suffering greatly from injuries received in the assault, and demanding damages from the petitioner. The latter was advised by the justice of the peace before whom his son had been tried that he was liable for damages for his son's assault, and he and his family, including the respondent, believed the fact to be so. The receipt of the letter from Warren's son caused some excitement in the family, and a fear existed among them that the petitioner's property would be seized by attachment and on execution, and that they would be rendered homeless, and it was proposed that he should convey his property to some one in order to save it for the use of the family. The petitioner replied that if he made it over to any one it should be to the respondent, who was his son. Several members of the family and relatives advised to this course, and the respondent was quite earnest in urging him to it. The respondent repeatedly represented to the petitioner that he did not want the property for himself, nor for his own use, but to prevent its being taken by Warren, and to preserve a shelter for the family, and that the petitioner could have it back whenever he wanted it. The petitioner promised to make the conveyance, and on the morning of the 2d of April, 1870, went with the respondent and another son to the office of an attorney in Bridgeport, who it was arranged should be employed to draw the deed. The attorney had been counsel for his son in the assault and battery case, and suspected the reason of the proposed conveyance. He therefore took the petitioner alone into his private office, and told him that if he proposed to make the conveyance on account of a supposed liability for his son's acts, it was not necessary, since he was under no such liability, and furthermore that the conveyance would be of no effect, legally, if he were. The petitioner replied that he had himself been away from home a great deal, that his health was poor, that it was all in the family,

that they were all there together, that the respondent had worked on the place and helped the family a good deal, and that he would give him a deed of the property any way. They then returned to the principal office, and the attorney proceeded to draw up a warranty deed of the homestead, and a quit-claim deed of the petitioner's interest in the land which belonged to the estate of his father, and which was then subject to his mother's dower. The petitioner executed and delivered both deeds and took them to the town clerk's office for record, and they were duly recorded.

The petitioner's mother died in March, 1871. The value of the homestead is $1,200, and the petitioner's interest in the dower land of the value of $1,166.67.

While the deeds were being drawn, a conversation took place between the petitioner and the respondent, in which the respondent was informed of the opinion given by the attorney as to the non-liability of the petitioner for his son's acts. In regard to the motive for the conveyance and the understanding of the parties in relation to it, the committee found that the petitioner received no consideration therefor, except so far as the same appears from the facts found; that he would not have made the conveyance but for the belief theretofore held by him, that there was danger of the property being attached; that having concluded to make it, being impulsive in his temperament, generous in his disposition, affected in his health, and suffering somewhat from an injury received by him some time before, considering that the respondent had assisted in the care of the place and the support of the family, and in view of his own age, he suddenly resolved to make it, notwithstanding the attorney's advice; and that it was made by the petitioner and received by the respondent upon the understanding between them that the place should be kept for the petitioner and his family to live in and occupy as theretofore, and that the respondent should take good care of and provide a comfortable home for him and them. The petitioner was then about sixty years of age, and though physically somewhat infirm, was of average mental capacity.

The petitioner and respondent have both been, during most of their lives, sea-faring men. The petitioner, since the breaking out of the late war, has only made occasional voyages, but has worked on his land and engaged in taking fish and clams, from the sale of which he has realized some profit. His domestic life and family relations, with the exception of occasional and temporary jars, were pleasant until after the conveyances in question were made.

In 1857 he mortgaged his homestead for $100. About two years later he gave a second mortgage for $60, and in 1866 a third mortgage for $81, all of them to one Aaron Smith. He paid no interest on any of them, and the second and third mortgages were given in part for accrued interest and in part for borrowed money. Once, before the conveyances were made, when spoken to by one of the family about the mortgages, the petitioner replied that they would soon be foreclosed and the place would be gone.

The respondent is thirty-four years of age and unmarried. He has always been sober, industrious and economical, and of good business management. He has generally had his home with his parents when not at sea, and his earnings, when not needed for his personal expenses, have gone towards the support of the family. For some years past he has contributed more than half the family supplies. Since the conveyances he has furnished nearly the whole, and has paid the taxes on the property, including one tax laid before the conveyances, and the interest on the mortgages.

After the conveyances the family lived together on pleasant terms for about four months, and the petitioner several times expressed his satisfaction at being so comfortably situated and so free from care. He did some work on the land and employed himself some of the time in fishing, but the respondent took the principal charge of affairs. Late one evening in August, next after the conveyances, the petitioner came home somewhat under the influence of liquor, and his wife seeing him come and go to the barn, retired to bed, having locked the door of the house. The petitioner, after remaining awhile at the barn, went to the house, and forced

open the door and entered. He then and on the following morning upbraided his wife in harsh and profane language for locking him out, and threatened her with personal violence if it should be repeated. The respondent replied to him in a spirited manner in his mother's behalf. The petitioner then and afterwards before bringing this suit demanded a re-conveyance of the property, but did not offer to re-imburse the respondent for his payments or expenses. The respondent always refused to reconvey.

From this time an estrangement existed between the petitioner on the one side and the respondent and the rest of the family on the other, which has grown to an intense bitterness and hatred. The petitioner's wife left his bed and has a petition for divorce now pending. The petitioner has often for some years made use of spirituous liquors, though seldom to the extent of intoxication.

Since the occasion above referred to, he has repeatedly, more especially when affected by liquor, and sometimes in the presence of visitors, made use of indecent and abusive language towards the members of his family, and has often publicly accused the respondent of cheating him out of his property, sometimes coupling with it very offensive epithets. On the other hand he has been treated harshly and with no respect by the respondent, and by the rest of the family with the respondent's knowledge and concurrence. For a time he was treated in the same manner as the other members of the family, and was provided with suitable food, bedding and bed clothing, of which proper care was taken, and had the same comforts as the rest of the family. But more than a year ago he was forbidden by the respondent to sit at the table with the family, since which time he has been furnished no food by them, nor any of the necessaries of life, excepting that he has been allowed to occupy a small bed room connected with the dwelling house, and nothing has been done by them for his comfort or maintenance. Once when the petitioner had provided himself with fresh straw for refilling his bed, it was removed and burned on the premises by some one of the family, but by whom it did not appear. It did not

appear that the respondent had made any threats to injure or destroy the property, nor to convey it away.

Upon these facts the case was reserved for the advice of this court.

*Lockwood* and *Sanford*, for the petitioner.

*G. H. Hollister* and *Sumner*, for the respondent.

PARDEE, J. We have here the case of a father, advanced in years, conveying his estate to a son upon his promise to care for and support his father thereafter and look to the estate for his recompence; but the son forgot both the filial duty and the legal obligation resting upon him and violated his agreement. For this the father asks that a decree may be passed compelling the son to reconvey the estate.

The respondent contends that he cannot be disturbed in the possession of the estate, inasmuch as he occupies the position of a purchaser for an adequate consideration; in this, that for several years prior to the conveyance he furnished more than half of the family supplies, and subsequent thereto nearly the whole, and has paid the taxes on the property, including one tax laid before the conveyance, and the interest on the mortgages.

Notwithstanding all this, the record makes it quite certain that the real motive which impelled the father to make the conveyance was the fear of possible poverty and want as the result of the threatened suit; a fear which the advice of counsel had not expelled from his mind; and that the real and only consideration for the conveyance is the agreement of the respondent to take good care of and provide a comfortable home for the father and his family.

The previous liberality of the son was indeed in the mind of the father, and helped to beget the confidence and trust which are implied in all the circumstances of this transfer. But the son then made no claim that his father was indebted to him in any amount, definite or indefinite, for that which he had done for the family in the past; the father recognized

no such indebtedness; nor did he undertake to liquidate a. specific debt by this transfer of his whole estate.

The payment of taxes by the respondent, subsequent to the conveyance, including one laid previous thereto, and the payment of interest on the mortgages, were necessary for the protection of the estate which he had undertaken to hold, and the family supplies were furnished in pursuance of his agreement.

But this partial and temporary performance of a contract which must continue in force until it is terminated by the voluntary act or death of the father, cannot be a payment of such a consideration for the estate as will entitle the respondent to hold it as against the petitioner after such a violation of the promise upon which he received it as is disclosed by this record.

The respondent urges that the petitioner has forfeited his right, both to continued maintenance and a reconveyance of the estate, by misconduct on his part, the character of which is described with particularity by the committee.

But, while it is true that the acts and words of the petitioner were well calculated to disturb the peace of his family, we cannot say that the respondent can find in them legal justification for his neglect and refusal to comply with the condition upon which he accepted the conveyance.

In *Peck* v. *Hoyt*, 39 Conn. R., 9, which presented the case of a breach of an implied contract similar in character to that which was expressly made by this respondent, this court advised the Superior Court to decree a reconveyance of the estate.

The inconsiderable sums which the respondent has paid for taxes on the property and interest on the mortgage, since the conveyance to him, are fully balanced by his use of the property.

We therefore advise the Superior Court to pass a decree requiring the respondent to reconvey the estate to the petitioner.

In this opinion the other judges concurred.