No. 37,221

JOHN W. BANKS, *Appellee,* v. INEZ BANKS, *Appellant.*

(199 P. 2d 181)

Opinion filed November 13, 1948.

*G. A. Roberds,* of Olathe, was on the briefs for the appellant.

*Howard E. Payne,* of Olathe, and *Ira B. Burns,* of Kansas City, Mo., were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to cancel a deed to real estate and to set aside a purported transfer of title to a motorcar. Judgment was for plaintiff setting aside and canceling the written instruments and giving defendant judgment for services performed and a lien on

the real estate to secure the judgment. The defendant has appealed.

In his petition plaintiff alleged his ownership of a described eighty and that while he was confined in a hospital defendant demanded that he execute instruments in writing advising him that it was necessary to assist her in the settling of his estate in the event of his death; that without knowledge that the instrument constituted a warranty deed he did on March 29, 1946, execute it and defendant caused it to be filed for record in the office of the register of deeds; that when he was released from the hospital he learned for the first time the real nature of the instruments he had signed and demanded of defendant that she reconvey to him, which she refused to do; that the deed and conveyance were without consideration, were never delivered by him to defendant, were procured through fraud at a time when he was incapacitated physically and mentally from understanding the nature of his act and at a time when there was a confidential relationship between plaintiff and defendant.

The second count of the petition contained about the same allegations except that they related to the transfer of title of a motor vehicle. The prayer of the petition was that the purported deed to the real estate and the purported transfer of the title to the motor vehicle be canceled and that defendant be ordered to deliver possession of the motor vehicle to him. The defendant answered admitting that plaintiff had executed the instruments. The answer also pleaded a general denial, and specifically denied certain statements in the petition and especially the allegation that the conveyances were wholly without consideration.

At the trial the plaintiff testified that he was seventy-four years of age; that his wife had died on the 11th of June, 1945; that defendant had married their son, who had died sometime before the happening of the events out of which this litigation arose; that the farm in question consisted of an eighty acres of land valued at about $100 an acre. He then testified to a series of transactions whereby the defendant had cared for him and his wife; that she had asked him to convey the farm to her and he had refused to do that but had told her he had left it to her in his will; that he had given her the keys to the lock box and she had seen his will but had apparently been dissatisfied with it and insisted on his conveying the farm to her.

During the course of the trial the plaintiff and defendant both testified to the fact that before her death plaintiff's wife had been afflicted with cancer of the colon, which caused her to be what is

called a diaper patient and that defendant had taken care of her until her death, sometimes at the farm home of plaintiff and sometimes at the home of defendant, and that the understanding between all of the parties had been that defendant would receive all of the plaintiff's property at his death in return for this care. There is no dispute in the record on either side as to this care and as to the fact there was such a contract. There is no dispute but that in March, 1946, plaintiff had suffered an injury to an old sore on his leg and it had been necessary for him to be confined at the hospital.

There is some dispute about the circumstances of the execution of the instruments. Plaintiff testified that defendant came to his hospital room and presented some instruments to him asking that he sign them saying it was necessary that they be signed by him so as to facilitate the managing of his estate in case of his death and that he did sign them without knowing what they were; that when he learned that they were a deed to the farm and a conveyance of the car he asked upon leaving the hospital and returning to defendant's home that she reconvey them to him and she refused to do so. Both parties agree that he wrote to the Grange which carried the insurance on the farm buildings and told them to cancel the insurance since he had turned the farm over to his daughter-in-law.

As to the making of the conveyance, the defendant testified that they had some talk about a will and that she suggested a deed was better than a will; that he said he was willing to make a deed and requested her to have one prepared and bring it to the hospital for him to sign. The defendant testified, in part, as follows:

"Q. Now, later on, after he made this deed to you he wanted you to deed the property back to him? A. On August 16th (1946).

"Q. Now, Mrs. Banks, Mr. Banks became dissatisfied in your home? A. He never said anything to me until August 16th.

"Q. And on August 16th, what did he say? A. He said 'You deed me back that farm and the car.'

"Q. And you refused to do it? A. I told him if that was the way he felt, we would have a settlement. He would pay me for my services I had rendered him and Mrs. Banks. I told him we would have a settlement and he said, 'No, we will do nothing of the kind. Nobody in the world appreciates it more than I do and I am going to thank you for that, and I will thank you to shut your mouth.'

"Q. Now, is that the first time you say he ever demanded the deed back for the farm and the title to the automobile? A. On August 16th is the first I ever heard about it.

. . . . . . . . . . . . . .

"Q. After he made that demand on you for the deed, August 16th, and

you said you would have to have a settlement, was he satisfied after that? A. After August 16th?

"Q. Yes. A. I never heard one word. He seemed perfectly contented up until he left.

"Q. Did he talk any more about deeding the place back to him? A. He told me on the morning he left. September 28th, I believe.

"Q. And what did you say? A. I said 'No, I am not deeding it back to you—we will have a settlement.' And he said, 'I am leaving.'

"Q. Do you mean by that, if you had a settlement that you would deed it back to him? A. I asked him if he would pay me for my services.

"Q. And what did he say? A. He told me to shut up about that—he wasn't paying anything.

"Q. He told you that on the morning he left? A. Yes, sir.

"Q. He said that on August 16th and again on September 28th? A. That is right."

The trial court found that plaintiff was entitled to have the deed to the real estate canceled subject to a lien of the defendant in the amount of $2,500, to which defendant was entitled by virtue of personal services rendered plaintiff. The court further found that plaintiff was entitled to reconveyance and possession of the automobile and that if the plaintiff decided to permit the defendant to retain possession and title to it he should be entitled to a reduction of $1,000 on the judgment against him in favor of defendant and in that event the lien on the real estate would be $1,500. The judgment further provided that the lien should not be payable to the defendant until the death of plaintiff and that if plaintiff desired to pay the judgment he should do so by depositing the amount of it in the First National Bank of Olathe, Kan., which bank was designated as trustee for that fund, and upon that payment the bank was authorized to release the real estate from the judgment lien.

The defendant filed a motion for a new trial setting out some seventeen grounds. This motion was overruled. Sometime later the plaintiff elected not to take the automobile in question and the judgment given against him in favor of defendant was reduced to $1,500. An application of defendant to set aside the judgment because it was not rendered within six months from the time the case was submitted was overruled and at the same time the court found that the case was not finally submitted until the briefs were filed about the first of April, 1947, and the court made an order to that effect.

The defendant appealed and sets out eleven specifications of error. Because some of these specifications overlap it will not be necessary for us to consider all of them.

We shall first consider the sixth because that presents the real legal question in the case. In this specification the defendant argues that the court erred because it failed to recognize and limit its finding, decision and judgment to the issues joined by the parties. The basis of that argument is that the plaintiff pleaded that his signature to the deed and the transfer of the car was obtained by fraud and misrepresentation and they were given without consideration and the defendant in her answer had denied this. There was no mention of a contract in the pleadings of either party—hence she argues the court was limited to a decision of whether or not the instruments were obtained by fraud and misrepresentation or given without consideration. In fact, the defendant argues that when the court found there was a valuable consideration for the conveyance of the property to defendant, then the court was bound to deny the prayer of plaintiff that the instruments be set aside.

This argument overlooks the fundamental nature of the action. What happened was that the court conceived the action to be one that involved the enforcement of a contract for support and maintenance. That is the theory upon which both parties tried it. Contracts of this type have been placed in a special class by the courts. The contract question came into the case when both parties testified that the conveyances had been made, and the plaintiff said they were made without consideration. The defendant to meet this testified that the consideration for the conveyances was a contract entered into and partially performed by her to take care of these old people in return for which she was to receive all the property. Once the court had concluded that plaintiff was entitled to have the conveyances canceled for whatever reason, it was proper for it to examine all the surrounding facts and circumstances as to whether they should be set aside and as to the rights of the grantee.

Even though there had been no fraud or deception in securing the signatures of plaintiff on the conveyances it was clear to the court that the contract for support could not be carried out as it was originally entered into, that is, that the plaintiff should be cared for by defendant for the rest of his life. They had disagreed and the old gentleman felt as though he did not care to live with defendant any longer. In such a case it would not do to deprive the plaintiff of his property for the rest of his life and not give him the care defendant had promised to give him; neither would it do to compel the plaintiff to live with defendant when he no longer

felt as though he cared to live with her in the close relationship that had existed; neither would it do to let the defendant go unpaid for the care she had given the old couple up to that time. All of the parties were in court. They both had ample opportunity to present their evidence as to the care defendant had given the old couple. To refuse to adjudicate her rights to be remunerated would result in compelling her to bring a separate action and thus bring on a multiplicity of suits. Confronted with such a situation, the court proceeded to consider all the elements and render a judgment which would do justice to all parties. Under all the circumstances the court did not go beyond the issues of the case.

The action is a proper one for the application of the rule laid down in *Martin v. Martin*, 44 Kan. 295, 24 Pac. 418. There a man and wife had conveyed their homestead to one son on the condition that the father would have his support as long as he should live. This son had deeded the farm to another brother with the understanding that this son was to support the father. This son and the father did not get along very well and complaint was made that he did not furnish proper support. The father commenced the action to set aside the conveyance. The court found that the sons were in default in the performance of the contract to support the father and decreed that he should recover the farm and also gave a money judgment against the two sons. One of the errors complained of by the sons on appeal was that they did not waive a jury at the trial and the court could grant only strictly equitable relief. We said:

"It is a well-settled principle of equity jurisprudence that where the court has all the parties before it, it will adjudicate upon all the rights of the parties connected with the suit, so far as it can, so as to avoid a multiplicity of suits. . . .

"The court below, having acquired jurisdiction of the parties and the subject-matter of the suit, had the inherent power to make all necessary orders, decrees and judgments, so as to settle the matters in controversy, and thus prevent litigation. Where a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief, and the special relief prayed for is not practicable, the court may retain the cause, decide all the issues involved, and may decree the payment of mere compensatory damages." (p. 297.)

To the same effect is our holding in *Simmons v. Shafer*, 98 Kan. 725, 160 Pac. 199. That was also a conveyance where the grantee had agreed to take care of her parents as long as they should live

and they were later unable to get along together. The action was brought to cancel the conveyance. There the conveyances were ordered canceled and a money judgment given. This court held:

"Where a deed to land was made for an expressed money consideration but the real consideration was an agreement by the grantee to provide for the care and maintenance of the grantor, who was about seventy years of age, during the remainder of his life, and where such care and maintenance were provided by the grantee for a number of years and until he died, and where after the death of the grantee his widow and the grantor were unable to live harmoniously together, whereupon she declined to stay longer in the home with him but did offer to pay for his care and maintenance furnished by others, it is held, in an action brought by the grantor to cancel the deed, that although there is power in the court to cancel a conveyance for a substantial breach of an agreement to support the grantor where that is the most effective remedy, a partial noncompliance with the agreement does not necessarily require a cancellation of the deed; and held further, that the judgment herein which made the future care and support of the grantor a charge upon the land is an appropriate remedy and not inequitable."

In deciding the case we said:

"In case of fraud in the making of such a contract, or of a purpose on the part of the grantee to avoid the obligation to provide future support, or where it is the only effective remedy, a court of equity is justified in setting aside a conveyance. (*Martin v. Martin*, 44 Kan. 295, 24 Pac. 418.) The plaintiff appealed to a court of equity for relief, and the parties interested being before the court it is justified in settling the rights of the parties upon equitable principles. There having been full performance of the contract for years, the death of the grantee, a change as to the improvements and mortgage debt against the land, and an offer by the defendant to provide for the care and maintenance of the plaintiff after it became evident they could not live together in friendly relations, the court naturally concluded that equity required a remedy other than absolute forfeiture and the cancellation of the deed. Equity is satisfied where the rights of the parties to the contract are substantially attained or provided in the decree."

In *Madden v. Glathart,* 115 Kan. 796, 224 Pac. 910, we approved the holding in *Martin v. Martin,* supra. See, also, *Bruer v. Bruer,* 109 Minn. 260, 123 N. W. 813, 28 L. R. A., n. s., 608, 18 C. J. 169, n. 55 (a); *Lewis v. Wilcox,* 131 Iowa 268, 273, 108 N. W. 536; *Ferguson v. Ferguson,* 287 Mich. 714, 284 N. W. 619, 26 C. J. S., p. 197, n. 79; and *Hawkins v. Smith,* 153 Kan. 542, 111 P. 2d 1108.

While there were no allegations about a contract in the pleadings defendant in proving there was a consideration for the conveyance was obliged to tell about her services and that they were performed under a contract. Furthermore, in her testimony already quoted in this opinion she stated that when plaintiff was finally leaving her

home she told him she wanted a settlement with him. At that time the idea of keeping title to the farm and the automobile even though she did not take care of plaintiff all his life had apparently not occurred to her. We conclude that the judgment of the trial court was within the issues raised by the pleadings.

Defendant points out that some days after plaintiff was discharged from the hospital he wrote the Grange, which had written the insurance on the farm buildings, stating that he had turned the farm over to his daughter-in-law. She argues that by this act he waived any fraud or misrepresentation in procuring the conveyances. This argument is not good. The trial court placed its judgment on the real equities of the entire situation rather than any technical rules as to contracts. We can discover no infirmity in that conclusion.

There is one more question. The taking of evidence was finished December 31, 1946. Both parties then rested and the action was continued until January 6, 1947. Just what was done on that day does not appear. The defendant's motion for a new trial was filed, heard and overruled in due time. On July 9, 1947, final judgment in the action was entered. On December 1, 1947, defendant filed a motion to vacate the judgment because it was void on account of not having been rendered within six months of the date when the cause was submitted. Thereupon the trial court reminded counsel that briefs were not filed until April 1, 1947. The court made a formal order that the case had not been finally submitted until that date and overruled defendant's motion to vacate the judgment. Defendant assigns this as error.

The statute relied on is G. S. 1947 Supp., 60-3134. It provides, as follows:

"Upon the trial by the court of any question of fact or law, or any incidental issue arising therefrom, in any district court, the decision of the court shall be given within six months from the time such issue or cause was submitted to him. (L. 1945, ch. 192; § 1; June 28.)"

The statute does not provide that a judgment rendered beyond the time shall be void. That would be a hardship on litigants on account of dilatory tactics of a trial court. Furthermore, where a trial court makes an order such as was made in this case that the case was really finally submitted at a later date, the statute does not apply.

The judgment of the trial court is affirmed.