No. 39,027

E. H. CHAPMAN, *Appellee,* v. FLOYD T. WARMBRODT and EDNA FRANCELE WARMBRODT, *Appellants.*

(259 P. 2d 158)

Opinion filed July 6, 1953.

*Jay Scovel,* of Independence, argued the cause and *J. P. Gendusa,* of Pittsburg, was with him on the briefs for the appellants.

*R. L. Letton,* of Pittsburg, argued the cause, and *P. E. Nulton,* of Pittsburg, and *O. L. O'Brien* and *John F. O'Brien,* both of Independence, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: Plaintiff brought this action April 7, 1952, to have set aside and canceled a deed which he had executed on June 5, 1950, to himself and defendants, with right of survivorship, on the ground that defendants had failed to perform conditions subsequent which constituted the principal consideration for the deed.

In order that the contentions of the respective parties may be clearly presented we have attached as Appendix "A" a copy of the petition which is identical with the one last ruled upon except the language included within the parenthesis in the last part of the italicized portion of paragraph 3. Upon the filing of the petition defendants filed an answer and cross petition, later an amended cross petition, and plaintiff filed a reply to their answer and an answer to their amended cross petition. At that stage of the proceedings plaintiff asked leave of the court to amend the petition by interlineation by adding the words in parenthesis above mentioned. Defendants asked leave to withdraw their answer and amended cross petition and plaintiff asked leave to withdraw his reply to the answer and his answer to the amended cross petition. All these motions were sustained. No complaint is now made of these rulings. Thereafter defendants filed a motion to strike the italicized portion of paragraph 3 and all of paragraphs 4, 5 and 6. This motion was considered by the court and overruled. Defendants then asked leave to file a general demurrer to the petition upon the ground that it did not state facts sufficient to constitute a cause of action. The court permitted the demurrer to be filed, which was duly argued and considered by the court and overruled. Defendants have appealed from two orders of the trial court—the order denying their motion to strike and the order of the court overruling their demurrer to the petition. A copy of the deed in question is attached as Appendix "B".

Appellants argue that the deed is not ambiguous and that there are no allegations of fraud, accident, mistake or undue influence. With reference to the ambiguity of the deed it recites that it was made "in consideration of the sum of Other valuable considerations & One and no/100 Dollars." What were the other considerations? We think plaintiff had the right to allege and prove what the other considerations were, even if they were orally made. Generally speaking, when the consideration of a deed is in question the actual consideration may be alleged and shown. Counsel for appellants quote and rely heavily upon one of the sections of our statute of frauds (G. S. 1949, 33-106), which as far as here pertinent reads:

"No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

The point is not well taken. In the many cases of this character which we have examined in this and other states we do not find that this section of the statute of frauds has been applied, or even considered.

In 9 Am. Jur. 376, § 31, Breach of Agreement to Support Grantor, it is said:

"According to many authorities, a grantor who conveys land in consideration of an agreement by the grantee to support, maintain and care for the grantor during his lifetime, may, upon the neglect or refusal of the grantee to comply with the contract, have a decree setting aside the deed and reinvesting him with the title to the real estate. The intervention of equity in such cases is sanctioned on the theory that the neglect or refusal of the grantee to comply with his contract raises a presumption that he did not intend to comply with it in the first instance, and that the contract was fraudulent in its inception, wherefore a court of, equity will not permit him to enjoy the conveyance so obtained. In many instances the courts have assumed jurisdiction and decreed cancelation, irrespective of any question of a remedy at law. Some, on the other hand, have granted relief on the sole ground that there is no adequate remedy at law for breach of the terms of a conveyance in consideration of support, . . . Rescission of such a conveyance has been granted upon the theory that the conveyance is one upon a condition subsequent, which is broken by the failure to provide support. . . ."

In 9 C. J. 1185 it is said:

"In the majority of jurisdictions the courts recognize contracts of the character of those under consideration as constituting a class by themselves in matters pertaining to their interpretation and enforcement, . . . The courts of these jurisdictions hold, 'without qualification, that nonperformance by the grantee of his covenant to furnish support and maintenance to the grantor constitutes sufficient ground for the rescission and cancellation of the conveyance, and the reasons advanced in support of this doctrine conclusively demonstrate its correctness. Furthermore it has been said in a well considered decision: 'Courts are not so much concerned as to the proper theory upon which such contracts may be avoided, as they are that they must be set aside in order to prevent grave injustice and the imposition upon aged people, by unscrupulous persons, who pretend love, devotion, and friendship, where no one of such elements exists.' In the application of the rule, it is immaterial whether the covenant for support and maintenance is embodied in the conveyance itself or in a separate instrument by way of bond or mortgage. And it has further been held that neither a reservation of a lien in the deed for maintenance and support, made in consideration of the covenant for maintenance, nor the insertion in the deed of a clause giving the grantor a right to re-enter and to use and occupy the land during his life, in case of nonperformance of the covenant, extinguishes or prevents right of rescission in the grantor for failure of the grantee to perform the covenant. . . ."

In 12 C. J. S. 989, it is said:

"In some jurisdictions, where a conveyance is made in consideration of a

contemporaneous parol agreement not expressed in the conveyance, that the grantee will furnish support and maintenance to the grantor, the failure or refusal to comply with the agreement furnishes a sufficient ground for the rescission and cancellation of the deed. [*Wilfong v. Johnson*, 41 W. Va. 283, 23 S. E. 730.] This principle applies equally whether the agreement is express or implied. [*Penfield v. Penfield*, 41 Conn. 474.]"

In the annotation in 112 A. L. R. 670 on the "Remedy of rescission for grantee's breach of agreement to support grantor," after citing some authorities holding rescission is not the proper remedy, on page 676 the annotator says:

"The doctrine which obtains in the great majority of the states is that conveyances of property in consideration of agreements to furnish support are in a class peculiar to themselves, and that ordinarily, if the grantee in such a conveyance repudiates, or substantially fails to perform, his agreement, a cancellation of the conveyance, and a rescission, may properly be decreed."

This is followed by citation of many cases from more than thirty states holding in accord with the annotator's statement, including our own case of *Martin v. Martin*, 44 Kan. 295, 24 Pac. 418, in which the court (p. 297) uses this language:

"It is a well-settled equitable rule that a court of equity will fully rescind a conveyance by parents to a son in consideration of the covenant of the son to support and maintain them, in case of a breach of such covenant. (*Bogie v. Bogie*, 41 Wis. 209; *Bresnahan v. Bresnahan*, 46 id. 385; *Blake v. Blake*, 14 N. W. Rep. 173; *Delong v. Delong*, 14 id. 591; *Drew v. Baldwin*, 4 id. 576.)"

This case was decided in 1890. Since then this court has consistently followed the rule of the majority of the states. In *Garnett v. Ternes*, 168 Kan. 66, 210 P. 2d 1001, it was held:

"Where a father had conveyed a house and lot to a daughter in consideration for her agreement to move into the house and make a home for him and take care of him for the balance of his life, and after parties had lived together for a time, the daughter behaved in such a manner toward the father that he believed he was not wanted in the house, and his situation became intolerable, it was not error for the trial court to set aside the conveyance, in an action brought by the father."

In *Banks v. Banks*, 166 Kan. 15, 199 P. 2d 181, it was held:

"In an action to cancel a conveyance of real estate on account of no consideration, and fraud in procuring the conveyance, where the grantee denies the fraud and pleads consideration and proves on the trial the consideration was care being given grantor and given his wife during her lifetime, the trial court having all parties before it and having jurisdiction of the subject matter may cancel the conveyances and at the same time give defendant grantee a money judgment for services performed and make the judgment a lien on the land and may make any other order necessary to do equity between the parties.

"In an action such as that described in paragraph 1 of this syllabus, the court should determine the cause from broad equitable principles."

On page 19 of the opinion it was said:

"Contracts of this type have been placed in a special class by the courts. The contract question came into the case when both parties testified that the conveyances had been made, and the plaintiff said they were made without consideration."

In *Schoonover v. Schoonover*, 86 Kan. 487, 121 Pac. 485, where one rendered service to another under an oral agreement that he would be compensated by the devise of real estate, the court in the opinion (p. 489) had occasion to say:

"But a contract of this sort is subject to a somewhat different rule from that applicable to an ordinary parol contract for the conveyance of land. . . . This accords perfectly with the principle that the statute of frauds is not enforced against one who in reliance upon an oral contract has so far acted upon it that he can not be restored to his original situation, and can not be adequately compensated in damages." (Citing, among other cases, *Bless v. Blizzard*, 86 Kan. 230, 120 Pac. 351.)

*Eastwood v. Eastwood*, 167 Kan. 471, 207 P. 2d 393, was an action to enjoin defendant from repudiating his oral contract to devise land in return for personal services. One of the defenses was "that the contract pleaded was unenforceable because of the statute of frauds." And (p. 476):

"The petition alleged full performance of the entire contract up to the time the defendant endeavored to make it impossible for plaintiff to perform further. Under such circumstances we have held an oral contract to convey real estate in return for personal services was not invalid on account of the statute of frauds." (Citing the Schoonover case and *Dent v. Morton*, 148 Kan. 97, 79 P. 2d 875.)

See, also, *Holland v. Holland*, 89 Kan. 730, 132 Pac. 989; 97 Kan. 169, 155 Pac. 5; 98 Kan. 698, 158 Pac. 1116.

The last amendment made by plaintiff to his petition added two items to the agreement not previously alleged, as follows:

"It being further agreed that said land would be re-conveyed to grantor at any time at his request and grantor to retain the use and income, in any event, during his lifetime."

Plaintiffs' action is not predicated upon the alleged portion of the agreement that the land "would be re-conveyed to grantor at any time at his request." It is predicated upon the broad, equitable principle that the deed should be canceled because of defendants' breach to carry it out. Hence, it is difficult to see where the statute of frauds relied upon by appellants comes into play.

We have examined all the cases cited by appellants: *Sill v. Sill,* 31 Kan. 248, 1 Pac. 556; *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953; *Peterson, Administrator, v. Honaker,* 114 Kan. 752, 220 Pac. 1025; *Roberts v. Roberts,* 130 Kan. 85, 285 Pac. 584; *Gates v. Syndicate Oil Corp.,* 132 Kan. 272, 295 Pac. 649; *Brown v. Pryor,* 133 Kan. 129, 298 Pac. 747; *Mueller v. Seiler,* 158 Kan. 440, 148 P. 2d 266; *Powell v. Powell,* 172 Kan. 267, 239 P. 2d 974, and find that none of them would require or justify a reversal of the judgment of the trial court.

We find no error in the record. The judgment of the trial court is affirmed.

## APPENDIX "A"

### Petition

Comes now the plaintiff and for his cause of action against the defendants, and each of them, alleges and states:

1. That plaintiff is a resident of Crawford County, Kansas, and his correct post office address is Kirkwood Apartments, Pittsburg, Kansas; that defendants are husband and wife and are residents of Crawford County, Kansas, and their correct post office address is 2707 North Michigan, Pittsburg, Kansas.

2. That on June 5, 1950, and for many years prior thereto plaintiff was the owner and in possession of the following described real estate, situated in Montgomery County, Kansas, to-wit: (description omitted) by conveyance from his wife, Ella Wyckoff Chapman, now deceased; that plaintiff is now and has been at all times mentioned herein in possession by tenant of all of the above described real estate.

3. That for a number of years plaintiff and defendants were neighbors in Pittsburg, Kansas, living in adjoining properties, and became close acquaintances; that shortly after the death of plaintiff's wife on June 30, 1948, plaintiff was in ill health and that at the invitation and suggestion of defendants, lived in defendants' home for a short while in the month of June, 1950; that plaintiff was then seventy-one years of age, in declining health and in need of future care and assistance. *That on said date, June 5, 1950, plaintiff and each of defendants entered into an oral contract and agreement whereby defendants and each of them promised, covenanted and agreed to furnish plaintiff a home in their home at such times and for such periods as he desired, and to furnish him such care, comfort and attention as his needs required for and during*

*the balance of his natural lifetime in consideration of which plaintiff agreed to make, execute and deliver a conveyance of all of the above described real estate in such form and manner as to make plaintiff and defendants record owners of said real estate as joint tenants with right of survivorship and not as tenants in common (it being further agreed that said land would be re-conveyed to grantor at any time at his request and grantor to retain the use and income, in any event, during his lifetime)*, and on said date, in consideration of said covenant, promise, agreement and contract of defendants and in performance of said contract and agreement, plaintiff prepared and executed a warranty deed bearing date of June 5, 1950, conveying the above described real estate to plaintiff and defendants as joint tenants with right of survivorship as aforesaid, copy of which deed is hereto attached, marked Exhibit "A" and made a part hereof. That thereafter and on June 19, 1950, plaintiff and defendants went to the real estate above described for the purpose of making certain arrangements concerning the tenancies thereof and in connection therewith proceeded to Independence, Kansas, where plaintiff and defendant, Floyd T. Warmbrodt, went to the office of the Register of Deeds of said County and State and plaintiff caused said deed, Exhibit "A," to be filed for record and the same was recorded on June 19, 1950, in Book 241 of Deeds at page 360 in the office of the Register of Deeds of Montgomery County, Kansas.

4. That after the making and recording of said conveyance, plaintiff's health improved and he for a period of time returned to and lived in his own home in Pittsburg, Kansas. Subsequently and in March of 1951, plaintiff became seriously ill and in need of a major operation; that defendants volunteered to and did assist the plaintiff in obtaining the required medical and surgical care and on his discharge from the hospital in April of 1951 and during his convalescence plaintiff, at defendants' invitation, lived in the home and residence of defendants; that thereafter and for a short period he again returned to and lived in his home until he sold the same on August 1, 1951. That thereafter plaintiff returned to the home of the defendants and lived therein and defendants, in performance of their contract, covenants and agreements aforesaid, furnished plaintiff suitable living quarters in their home and continued so to do until on or about March 14, 1952, when defendant Floyd T. Warmbrodt, without any fault of plaintiff or any provocation by any act or word of plaintiff advised plaintiff that he could no longer

continue to live in and at the home of defendants and ordered him, in a manner indicating and threatening physical harm, to leave the home of defendants and not to return. That plaintiff, compelled by defendants' said actions and directions, did leave the home of defendants, removed all of his belongings therefrom and established living quarters in a home elsewhere as he was compelled to do by reason of defendants' breach of their contract, covenant and agreement aforesaid, notwithstanding that plaintiff expressed a willingness to continue to reside with defendants as they had agreed; that at the time of said ejection of plaintiff from the home of defendants as aforesaid, plaintiff requested and demanded that defendants reconvey the above described real estate to the plaintiff and divest themselves of all right, title and interest therein in rescission of said contract and agreement, which defendants had breached, violated and in their performance of which they had utterly defaulted and by said reconveyance restore the parties, insofar as practicable, to their position and status prior to the making of said contract aforementioned but defendants, and each of them, failed, neglected and refused to execute such conveyance.

5. That the action, conduct, demeanor and behavior of defendants toward plaintiff during a short period of time prior to March 14, 1952, was such as to become intolerable and make it impossible for plaintiff to continue to live in the home of defendants, the defendants thereby made their performance of the aforementioned contract and agreement wholly and utterly impossible and that on said date, March 14, 1952, defendants breached said contract by ejecting plaintiff as aforesaid.

6. That plaintiff has no adequate remedy at law and no action or proceeding is available to plaintiff as a proper and sufficient remedy other than this proceeding in equity; that by reason of defendants' breach of contract as aforesaid and their making their performance thereof impossible said contract should be rescinded and plaintiff's conveyance to the above described real estate aforesaid should be canceled, set aside and held for naught and defendants divested of any right, title or interest in or to the above described real estate or any part thereof.

WHEREFORE, Plaintiff prays the judgment, order and decree of this Court, vacating, canceling and setting aside the aforementioned conveyance of the above described real estate and directing defendants to make, execute and deliver unto plaintiff a sufficient convey-

ance divesting defendants of any right, title or interest in or to said above described real estate or any part thereof, and in the event of failure so to do, the judgment and decree of this Court shall stand as such conveyance; that plaintiff have judgment for costs herein and such other and further relief as to the Court seems just and equitable. (Our italics.)

(Verified by Plaintiff)

Filed April 7, 1952.

## APPENDIX "B"

### Exhibit "A"

This Indenture, Made this 5th day of June, 1950, between E. H. Chapman of Crawford County, in the State of Kansas of the first part, and E. H. Chapman & Floyd T. Warmbrodt & Edna Francele Warmbrodt, his wife (with right of survivorship) of Crawford County, in the State of Kansas of the second part,

Witnesseth, that said party of the first part, in consideration of the sum of Other valuable considerations & One and no/100 Dollars, the receipt whereof is hereby acknowledged, does by these presents, grant, bargain, sell and convey unto said parties of the second part, their heirs and assigns, all the following described Real Estate, situated in the County of Montgomery and State of Kansas, to-wit: (Legal description omitted) and said E. H. Chapman, for his heirs, executors or administrators, does hereby covenant, promise and agree, to and with said parties of the second part, that at the delivery of these presents lawfully seized in his own right, of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above granted and described premises, with the appurtenances; that the same are free, clear, discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumbrances, of what nature or kind soever; and that he will Warrant and Forever Defend the same unto said parties of the second part, their heirs and assigns, against said party of the first part, heirs, and all and every person or persons whomsoever, lawfully claiming or to claim the same.

In Witness Whereof, the said party of the first part has hereunto set _____ hand, the day and year first above written.

(Signed and acknowledged)