No. 39,928

Nellie Mae Worrell, *Appellant,* v. Thomas C. West and Grace S. West, *Appellees.*

(296 P. 2d 1092)

Opinion filed May 5, 1956.

*Kenneth M. Nohe,* of Wichita, argued the cause, and was on the briefs for the appellant.

No appearance by appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action by plaintiff Nellie Mae Worrell to cancel a deed executed by her to defendants Thomas C. and Grace S. West, covering certain real property, on the ground defendants failed to perform conditions subsequent which constituted the consideration for the deed. From an order of the trial court sustaining defendants' demurrer to plaintiff's evidence, she appeals.

Appellant Nellie Mae Worrell will hereinafter be referred to as plaintiff, and appellees Thomas C. and Grace S. West, as defendants.

The petition, as amended, alleged the ownership of plaintiff in certain described real property in Wichita; that she was fifty-six years of age, had little business experience and was unfamiliar with real estate transactions. Defendants were husband and wife, and about September 18, 1953, they conspired together for the purpose of defrauding plaintiff of her title to and possession of the described real property and, in connection with such conspiracy, defendants entered into a scheme or device to defraud the plaintiff by making an oral promise to her that if she would deed her property to them, they would assume all mortgage payments on the property and provide plaintiff a home for the remainder of her life, without further obligation on her part. Plaintiff, relying on this promise, on September 21, 1953, executed and delivered to defendants a warranty deed to her property. Defendants at the time of making such oral promise had no intention of providing plaintiff a home for the remainder of her life, and immediately after the execution of the deed and in furtherance of the scheme, defendants became abusive to plaintiff, cut off the heat and electricity in her room, locked her

out of the house, placed her in fear of her life, and made it so unbearable that plaintiff was compelled to move from the property. No consideration was paid for the real property except the promise as indicated and, due to the misrepresentation and fraud on the part of the defendants, the plaintiff was deprived of her title and possession of the property. Plaintiff asks by way of relief that the deed be declared null and void and set aside, and that defendants be ejected from the premises and be forever barred from claiming any right to the same.

The testimony in support of plaintiff's petition may be narrated in part as follows: Plaintiff was fifty-six years of age and the owner of the property in question, worth from $10,000 to $12,000 at the date of the execution of the deed, subject to two mortgages on which there was a total balance due of approximately $1,000. Plaintiff became acquainted with defendant Grace S. West while they were employed as maids in a Wichita hotel. They visited back and forth from time to time thereafter. In July, 1953 defendants came to the cafe where plaintiff was working as a waitress, told her that they had lost their residence and had to move that evening and wanted to store their furniture in plaintiff's garage. She consented, and the furniture was stored in her garage while defendants went to Colorado to look for work. Being unsuccessful in obtaining work, they returned to Wichita and with their three children moved into plaintiff's home, plaintiff retaining a room and paying all utility bills. The food bills were shared by all parties. They lived in this manner about two months. During this period, the defendants talked with plaintiff and the mortgagee, Mrs. Lela T. Van Dusen, about deeding plaintiff's property to defendants and, in these discussions, defendants agreed that if plaintiff would give them a deed, defendants would give her a home for the rest of her life, take care of all her obligations, and pay her life insurance.

Henry J. Brown testified that he had a conversation with defendant Grace West, and she said Mrs. Worrell was sick and had lots of bills to pay and she (plaintiff) wanted to give defendants a deed to the property and they would give her a home the rest of her life, take care of all her obligations and pay her life insurance. He then talked to plaintiff and she advised him she was confident the defendants would carry out their agreement. He further asked defendant Grace West the following question:

" '. . . Who is going to take care of Mrs. Worrell if you should happen

to die?' She says, 'Mr. West, my husband. He thinks just as much of Aunt Nellie as I do. He would do just as much for her as I would . . . Now Aunt Nellie is going to have a room back here of her own. . . .'"

The evidence disclosed that defendants made arrangements with an attorney to prepare a deed conveying plaintiff's property to them, and took the plaintiff to the attorney's office for the purpose of executing the deed. The attorney was not advised of any agreement between the parties. He prepared the deed on September 18, 1953, wherein the plaintiff conveyed the property in question to the defendants. The deed was executed by the plaintiff and delivered. The attorney testified that no consideration passed from the defendants to the plaintiff at the time the deed was signed, and that defendants paid him for his services with an insufficient fund check which was later made good. From the time the deed was executed, plaintiff remained in her home for approximately one month. During this period defendants, without plaintiff's consent, moved her furniture out of the house into the garage, moved their own furniture in, turned off the electricity and gas and removed plaintiff's heating stove so that she could neither light nor heat her room, put a new lock on the front door of the house and refused to give her a key, locked the door between her room and the kitchen, and prohibited her from using the telephone, although she was paying for it. The plaintiff was placed in fear of her life and the situation became so intolerable that she was forced to move from her home on October 19. In the latter part of October, a conference was held between plaintiff's attorney and the defendants, wherein a demand was made for the return of the property to plaintiff, which demand was refused and this action followed.

At the conclusion of plaintiff's evidence, defendants demurred on the ground it failed to establish facts sufficient to sustain a cause of action as pleaded in plaintiff's petition. From an order of the trial court sustaining this demurrer, plaintiff appeals, and asserts that the court erred in sustaining the demurrer to her evidence.

At the outset it may be stated that we are called upon to review the sufficiency of plaintiff's evidence as against defendants' demurrer, and not to weigh the evidence for the purpose of rendering a decision on the merits of the action, and this same duty was incumbent upon the trial court. The rule is so well established in this and other jurisdictions that it should not be necessary to reiterate that in testing the sufficiency of evidence as against a de-

murrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with, all reasonable inferences to be drawn therefrom, and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between his direct and cross-examination, and give the evidence of plaintiff a liberal construction resolving all doubt against defendants and, if so considered, there is any evidence which supports or tends to support plaintiff's case on any theory, the demurrer should be overruled. A few of our more recent cases adhering to this rule are: *In re Estate of Dieter,* 172 Kan. 359, 239 P. 2d 954; *Staab v. Staab,* 160 Kan. 417, 163 P. 2d 418; *Palmer v. The Land & Power. Co.,* 172 Kan. 231, 239 P. 2d 960; *McCracken v. Stewart,* 170 Kan. 129, 223 P. 2d 963; *Fry v. Cadle,* 171 Kan. 14, 229 P. 2d 724; *Blankenship v. Fraker,* 173 Kan. 438, 439, 249 P. 2d 683; *Revell v. Bennett,* 162 Kan. 345, 176 P. 2d 538; *Huggins v. Kansas Power and Light Co.,* 164 Kan. 27, 187 P. 2d 491; *Gabel v. Hanby,* 165 Kan. 116, 193 P. 2d 239; *Samms v. Regier,* 167 Kan. 556, 207 P. 2d 414; *Hukle v. Kimble,* 169 Kan. 438, 441, 219 P. 2d 434; *Schneider v. Stewart,* 170 Kan. 158, 163, 223 P. 2d 698; *Cain v. Steely,* 173 Kan. 866, 252 P. 2d 909; *Siegrist v. Wheeler,* 175 Kan. 11, 259 P. 2d 223; *Messinger v. Fulton,* 173 Kan. 851, 252 P. 2d 904; *Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923. Other cases holding to the same effect may be found in 5 Hatcher's Kansas Digest [Rev. Ed.], Trial, § 151, and West's Kansas Digest, Trial, § 156 (2) and (3).

In considering and deciding a demurrer to plaintiff's evidence in a case tried to the court, the same rule obtains as in cases tried by a jury. (*Farnsworth v. Clarke,* 62 Kan. 264, 62 Pac. 655; *Windus v. Bodecker,* 132 Kan. 857, 297 Pac. 702.) Considering plaintiff's evidence in its most favorable aspects in accordance with the rules enumerated, we are of the opinion that there was ample evidence to support plaintiff's cause of action as set forth in her petition, and the court erred in sustaining the demurrer.

In this and other jurisdictions, a grantor who conveys land in consideration of an agreement by the grantee to support, maintain, and care for the grantor during his lifetime, may, upon the neglect or refusal of the grantee to comply with the contract, have a decree setting aside the deed and reinvesting him with the title to the real estate. The intervention of equity in such cases is sanctioned on the theory that the neglect or refusal of the grantee to

comply with his contract raises a presumption that he did not intend to comply with it in the first instance, and that the contract was fraudulent in its inception, wherefore a court of equity will not permit him to enjoy the conveyance so obtained. Rescission of such a conveyance has been granted upon the theory that the conveyance is one upon a condition subsequent, which is broken by the failure to provide support. (9 Am. Jur. 376, § 31; see, also, 9 C. J. 1185, and 12 C. J. S. 987.)

We have held, in contracts of the character of the one under consideration, that nonperformance by the grantee of his covenant to furnish support and maintenance to the grantor constitutes sufficient ground for the rescission and cancellation of the conveyance. The subject was discussed and the authorities were well analyzed by this court in *Chapman v. Warmbrodt,* 175 Kan. 125, 259 P. 2d 158, and are applicable here.

It follows that the judgment of the trial court is reversed and the case is remanded for further proceedings in accordance with the views herein expressed.