Nos. 41,722 and 41,958

BILLY D. RAND and JOYCE IMOGENE RAND, *Appellees,* v. THE EDMONDS CONSTRUCTION COMPANY, a corporation, *Appellant,* and H. LEE ZIMMERMAN and ROBERT H. ZIMMERMAN, partners, d/b/a ZIMMERMAN HARDWARE AND SUPPLY COMPANY, *Appellees.*

(352 P. 2d 1032)

Opinion filed June 11, 1960.

*John W. Brand, Jr.,* of Lawrence, argued the cause, and *David H. Fisher* and *Donald Patterson,* both of Topeka, and *Richard B. Stevens,* and *John W. Brand,* both of Lawrence, were with him on the briefs for the appellant.

*Ralph M. King, Jr.,* of Lawrence, argued the cause, and was on the briefs for appellees Rand.

*John A. Emerson,* of Lawrence, argued the cause, and *Richard A. Barber,* of Lawrence, was with him on the briefs for appellees Zimmerman.

The opinion of the court was delivered by

JACKSON, J.: The above two numbered appeals involve an appeal from the judgment of the trial court and also an appeal from the order of the trial court overruling a motion for new trial. There will be no need of further reference to the separate appeals (G. S. 1959 Supp. 60-3314a).

In the court below the Rands sued the appellant and the Zimmermans to recover damages for the loss of personal property alleged to have been caused by a fire caused by the negligence of the defendants. The appellant and the Zimmermans by their separate answers merely contended that they were not responsible for the fire. The case was tried to the court and the plaintiffs introduced their evidence. The defendants demurred thereto separately.

The trial court overruled the demurrers, and the defendants then offered no evidence. Whereupon, the trial court took the case under advisement and in a few days entered judgment for plaintiffs against the appellant and for the defendants Zimmerman for their costs.

The learned trial judge filed a memorandum opinion which well summarizes the facts and law in this case. We are setting forth the major part of this opinion after inserting citations to the Pacific Reporter in accord with the editorial policy of our reports:

"This case was tried to the Court on May 25, 1959 and was taken under advisement for decision as hereinafter indicated.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Under the liberal rules for construing a plaintiff's evidence upon a demurrer thereto (*Worrell v. West*, 179 Kan. 467, 296 P. 2d 1092 Syl. 1), the demurrer of defendants Zimmerman was overruled, the Court reserving its right to change such ruling in the further trial and consideration of the case. After it had developed that neither the defendant corporation nor defendants Zimmerman would offer evidence but would stand, respectively, upon their demurrers, defendants Zimmerman moved for judgment, which motion, together with the merits of the case were taken under advisement for decision.

"Before proceeding with findings of fact, the stipulations made prior to the actual trial should be noted. Such stipulations are: (1) The correct name of the defendant corporation is 'The Edmonds Construction Co., Inc.'; (2) The City ordinances are as pleaded by plaintiffs; (3) If plaintiffs are entitled to recover, their damages shall be fixed at 75% of the amount set out in the prayer of their petition. Also prior to trial the action was dismissed on motion of plaintiffs as to the defendant, Orville L. Edmonds, and each of the remaining parties, respectively, waived a jury. Hereinafter defendant, The Edmonds Construction Co., Inc., its officers, agents and employees, will be referred to as the corporation, and defendants, H. Lee Zimmerman and Robert H. Zimmerman, partners, dba Zimmerman Hardware and Supply Company, will be referred to as the partners.

"Fom the evidence received, the following findings of fact are made:

"(1) There is a three story building at 747 Massachusetts Street in Lawrence, Kansas, which, on and immediately prior to May 28, 1958, was owned by Alice Meyn, whose agent is Paul Smart. The first floor of said building was then occupied by the Crown Drug Company. On the second floor thereof, were three apartments, one of which was situated at the East end of said building and was then occupied by plaintiffs.

"(2) Shortly prior to the aforesaid date Paul Smart called the corporation to have some metal sills removed from the windows of the Meyn building so that such metal would not fall into the nearby streets. The corporation agreed to do the job requested by Mrs. Meyn's agent on the basis of cost plus 10%.

"(3) The work got under way about two days prior to May 28, 1958, when scaffolds were erected and the extent of the work to be done was determined.

On inspection the corporation discovered that the metal to be removed was cast iron instead of tin as the corporation had originally believed it to be, which fact the corporation communicated to Mr. Smart.

"(4) Although the corporation had undertaken many construction and repair jobs in which welding and cutting was involved, it had no welding equipment or employee who did such work. In such instances the corporation employed the equipment and a man to operate it at an agreed rate of $6 per hour, usually from the partners. So upon discovering that it would need a cutting torch it contacted the partners, who dispatched the needed equipment and man to the corporation's job on the Meyn building, where such man was at all times in question under the sole direction and control of the corporation.

"(5) On the morning of May 28, 1958, the scaffold was on the south side of the building, where the workmen of the corporation were cutting the metal to be removed. At about 9 A. M. that day plaintiffs left their apartment, closing all windows except one of two narrow, close-together windows in their bedroom, (which was open three to four inches) which room was on the north side of the east front of such building.

"(6) About 3 P. M. of the day above mentioned, Bill Rand, one of the plaintiffs, returned to the apartment to get some money. On approaching the building he noticed the scaffolding had been moved to the front or east side thereof where the workmen were engaged in the cutting operation. While in the apartment, this plaintiff noticed a glow on the bed, which was near the open window, which glow, upon examination, turned out to be a fire. Such plaintiff removed the quilt, threw it in the hall, and upon his return noticed the glow had turned into a fire—so grabbing what he could, he made his exist and called the fire department.

"(7) The cutting equipment supplied with a workman by the partners to the corporation operated on electricity. When the electric torch was applied to the metal to be cut, such contact caused such metal to disintegrate into bits of molten metal, which when released would fly in all directions, ultimately dropping to the ground below the site of the cutting operation. Being aware of the fire hazard from such work, the corporation took the following precautions: one of its employees worked on the scaffold with the operator of the cutting torch to assist in removal of the metal being cut and to close windows in the building and to watch for fire; the large front windows on the ground floor were boarded over; the area below the cutting was roped off and was patroled by two employees of the corporation to warn pedestrians away from the area; the cashier in the Crown Drug Store was requested to warn the store's customers to watch for flying sparks upon leaving the store; and plywood guards were placed on either side of the scaffold to prevent the sparks from flying sideways or laterally.

"(8) Early in the afternoon of May 28, 1958 the scaffold was on the east or front side of the building and the two men who were doing the cutting, assisting and fire watching were working on the third floor windows. At this time one of the east bedroom windows in plaintiff's apartment was still up three or four inches. On the outside of this window was a screen which covered only the bottom sash. Between the top of such screen frame and the window sash there was a gap of sufficient width to permit the entry of the

particles of molten metal which were being released by the aforesaid cutting operation on the third floor window which was above the open window of plaintiff's apartment.

"(9) As the corporation's cutting work progressed on said third floor windows, some particles or particle of molten metal settled between the screen and sash of plaintiff's second floor apartment bedroom window and landed on the bed which was adjacent to such window, as a result of which the property of plaintiffs located in said apartment was burned and damaged. (As to circumstantial evidence, see: *Snyder v. McDowell,* 166 K. 624 at 626, 203 P. 2d 225.)

"(10) That at about 3 P. M. on the day of said fire, the corporation's scaffold fire watcher noticed the fire in plaintiff's apartment and immediately descended, calling the news of the fire to the welder as he did so. The fire department appeared about this time, probably at the call of plaintiff, Bill Rand. The welder on descending saw the fire chief and said the sparks must have caused the fire, or words to that effect.

"(11) The corporation did not have a shield of any kind which would prevent sparks from entering plaintiff's apartment, either on the windows thereof or under the place where the cutting was in progress, nor did the corporation close the window in plaintiff's bedroom prior to the cutting on said third floor window.

"From the foregoing findings of fact, the following conclusions of law are made:

"1. The corporation was responsible for, completely in charge of, and exercised full control over the work in question and the men who were employed to do the same (*Beitz v. Hereford,* 169 K. 556, 220 P. 2d 135; *Baker v. Petroleum Co.,* 111 K. 555, 207 Pac. 789; *Moseman v. Penwell Undertaking Co.,* 151 K. 610, 100 P. 2d 669; *Hotel Kansan Operating Co. v. Olson,* 171 K. 295, 232 P. 2d 417; *McGrath v. E. G. Budd Mfg. Co.,* 348 Pa. 619, 36 A. 2d 303).

"2. The corporation was negligent in continuing to use the cutting torch once the volume of sparks and hot metal or oxide began falling near the window of plaintiff's apartment without taking reasonable and prudent action to prevent a fire; and, such negligence was the sole proximate cause of the fire which destroyed or damaged plaintiff's property.

"3. That plaintiffs are entitled to judgment against the corporation in the sum of $1904.88 and costs.

"4. That the partners are entitled to judgment for their costs.

"Judgment in accordance with the foregoing findings and conclusions will be entered on May 29, 1959.

"Signed and dated at Lawrence, Kansas on May 26, 1959.

"Frank R. Gray
District Judge"

The above opinion is entirely supported by the facts and law and is hereby adopted as the opinion of this court.

The judgment appealed from is affirmed.

It is so ordered.