## JOHN MOORE v. THOMAS CASS.

1. NEGLIGENCE; *Diligence of Hirer*. The degree of negligence necessary to authorize a recovery against the hirer of a horse which died during the bailment, is not gross negligence, but what is called ordinary negligence; and ordinary negligence is the omission of that diligence in the use and care of the horse which the generality of mankind use as to their own horses. And the omission of such diligence is called ordinary negligence.

2. BURDEN OF PROOF; *Instructions*. In an action against the hirer of a horse to recover damages for the death of the horse the plaintiff is not required to prove any greater degree of negligence than ordinary negligence; and instructions exacting proof of any greater degree are properly refused.

3. JURY—DELIBERATION—*Direction of Court*. It is not improper for a trial court when the jury have reported that they could not agree to urge them to make another effort in a spirit of conciliation; and if in making such remarks a phrase of doubtful import is dropped, and not excepted to or the attention of the court called to it, the supreme court will not for that reason reverse the judgment.

4. JURORS; *Exemption; Disqualification*. The law exempting persons over sixty years of age from serving on a jury, is a favor to a class, and does not render a person over that age incompetent if he chooses to waive his privilege.

5. INTIMACY *with Party, no Disqualification of Juror*. An intimate acquaintance with one of the parties to an action does not disqualify a person from serving on a jury in such action: nor does the frequent meeting of persons necessarily show that there is any intimacy between them.

*Error from Leavenworth District Court.*

THE action below was by *Cass* as plaintiff to recover of *Moore* the value of a horse hired by him, and claimed by plaintiff to have died in consequence of *Moore's* negligence, and his failure to use proper care and skill in the use and feeding of the animal. The action was tried at the November Term 1871. Verdict and judgment for plaintiff for $75. *Moore* moved for a new trial, and one of the grounds of the motion was, "Because of abuse of discretion of the court by which the defendant was prevented from having a fair trial, in this, that the court used language to the jury calculated to mislead them in the faithful and conscientious discharge of

their duty." In support of this part of the motion defendant filed the affidavits of two of the jurors, to-wit:

W. M. Wilson deposed — "That on said day, after the jury had been out all the night before, the judge of said court, at about 10½ A.M., said to the jury in substance, that the jury should consider of their verdict in a conciliatory spirit, and endeavor to agree; that no man should say the verdict must be as he wanted it, but all should be governed by a spirit of conciliation."

And Charles Moses deposed — "That his honor the judge of said court said to the jury in substance — Gentlemen, you should consider this case in a spirit of conciliation; you should endeavor to agree, if possible, by conciliatory means. No man should say that the verdict *must* be as he wants, but all should consider the case in a friendly spirit, and earnestly endeavor to agree."

The motion for a new trial was overruled, and *Moore* brings the case here on error.

*J. C. Hemingray,* for plaintiff in error:

1. The instructions given by the court at the request of plaintiff, even when taken together, are too confined, tending to fasten the attention of the jury upon the action of the defendant, rather than upon a principle. They should have contained an explanation of the words "negligence," and "carelessness," and also the direction that if the defendant used that diligence in the care of the horse "which all prudent men use, that is, which the *generality* of mankind use, in keeping their *own*" horses, he would not be liable in damages to the plaintiff.

2. The court further erred in refusing to give the instruction as asked for by the defendant, which is in these words: "The burden of proof is upon the plaintiff in this action to show gross carelessness, or negligence, on the part of the defendant in the care of the horse." If the bailee who pays for the use of a horse is liable only upon the "omission of such diligence as the generality of mankind use," and the burden of proof is upon the bailor, as it undoubtedly is, to show such omission, then, when such omission is proved,

"gross negligence" is also proved; for surely that must be gross negligence which omits to do that which the generality of mankind do in taking care of their own property. Story on Bail., §§ 399–408; Jones on Bail., 5, 10; 7 Humph., 134; 3 Barb., 383; Shearman & Redf. on Neg., §§ 6–12.

3. The court erred in using language to the jury, as shown by the affidavits of Wilson and Moses, calculated to mislead the jury in the faithful and conscientious discharge of its duty. Code, § 280; 2 Graham & Wat. New Tr., 362; 32 Barb., 33.

4. The proceedings of the court were irregular, in that persons over the age of sixty years were permitted to sit on the jury. Gen. Stat., ch. 54, §§ 2, 18, 19; 2 Graham & Wat. New Tr., 275.

5. One of the jurors (Donnelly,) who tried the case, upon his examination under oath as to his qualifications as a juryman, stated that he had not formed or expressed any opinion about the case, or the merits thereof; that he did not know anything about the facts of said case; that he was not intimately acquainted with the plaintiff, Cass, but knew him. Whereas the evidence on the motion for a new trial clearly shows that he was, at the time of his said examination, an old and intimate friend of said plaintiff. It is scarcely necessary to say that the defendant was entitled to a fair trial at the hands of an *impartial* jury. Donnelly was not an impartial juror; and it is impossible to know, even if it were proper to inquire, the precise extent of the influence he exerted in bringing about the result. The defendant's cause was submitted to but *eleven* jurors, who could be said to have been *impartial*. He was entitled to twelve impartial jurors. Code, § 270; 3 Coke, 457; Coke's Litt., 154*b*.

The opinion of the court was delivered by

KINGMAN, C. J.: It is claimed that the instructions given at the instance of defendant in error (plaintiff below) are not correct; but as there were no exceptions to them, this court will not examine them.

The court refused to give this instruction asked by plaintiff in error: "The burden of proof is upon the plaintiff in this action to show gross carelessness or negligence on the part of the defendant in the care of the horse." The action was to recover damages for the death of a hired horse caused by the negligence of the hirer. The hirer was liable for an omission of that diligence in the use and care of the horse which "all prudent men use, that is, the generality of mankind use, as to their own horses." Such an omission is called ordinary negligence. That degree of negligence only the plaintiff was required to show, to entitle him to recover. The instruction asked, demanded proof of gross negligence to authorize a verdict. The difference between gross and ordinary negligence is too well established to require comment. Because the instruction exacted the proof of a degree of negligence greater than the law requires, it was not law.

*1. Negligence of hirer.*

*2. Instructions; burden of proof.*

The remaining questions arose on a motion for a new trial. The first is, that the court used language to the jury calculated to mislead the jury in the discharge of its duty. The remarks made only appear in affidavits, and certainly bore as strongly against one side as the other. Neither party made any objections at the time, but waited the result, and then the losing party was shocked at expressions "calculated to mislead the jury in the faithful and conscientious discharge of its duty." It is an uncommon method to present the remarks of a court to a jury by means of affidavits addressed to the court which makes the remarks. It would be better to incorporate such remarks in a bill of exceptions, wherein the judge could set down just what he did say. In this case two jurors profess to give the substance only of what was said to them by the court, and so far as it was calculated to induce them to agree on a verdict it was eminently proper. The amount in controversy was small. The testimony was not strong on either side. It was very desirable that the controversy should be settled, if possible, without the cost and inconvenience of another trial.

*3. Deliberations of jury. Directions of court.*

The jury had been out all night. The only phrase in the remarks of the court about which there can be any doubt is this: "That no man should say the verdict must be as he wants it, but all should be governed by a spirit of conciliation." We are not ready to say that *that phrase* embodies the law that should govern a jury; but taken in the connection in which it was used we feel sure the jury were not misled by it. They must have understood, not that any juror should give up his own judgment, but should hold it open to reason and further examination in the jury-room.

Again, it is claimed that the fact that one of the jurors who was over sixty years of age was permitted to sit on the jury, would invalidate the verdict. The fact appears only 4. Jurors' exemp-  after trial, and by the affidavit of the juror over
tion; disqual-
ification.   the age fixed by law when men are exempt from such service. While the juror was clearly exempt by law from service as juryman, still the law does not render him incompetent on that account. The law is for the benefit of a class of men. If the exemption is not claimed by the party interested there is no one else injured by his service on the jury. This point has been often decided, and with marked uniformity: 2 Graham & W. on New Trials, 275, *et seq.*

The remaining error urged arose on this state of facts: John Donnelly, one of the jurors who tried the case, upon his examination under oath as to his qualifications as a jury-
5. Intimacy with  man stated that he was acquainted with the plain-
party no dis-
qualification  tiff, but not intimately acquainted with him; that
of juror.    he knew nothing about the case, and had not formed or expressed an opinion as to it. After the trial five affidavits were read showing the acquaintance between the plaintiff and the juror, and which plaintiff in error claims show an intimate acquaintance. Neither an acquaintance nor an intimate acquaintance with a party to a suit renders a juror incompetent. It does not necessarily show that the juror would not be impartial. It would depend on the moral character of the man, and his mental organization, what effect his intimacy might have on his judgment, even if this intimacy is caused

by strong friendship, which is not always the case. Intimacy frequently grows out of business relations, and is strengthened by habit, and may exist with envy and dislike. This may not be a very amiable feature, but it is true. The fact of intimacy does not of itself disqualify a man as a juror, though in most cases it would cause a peremptory challenge of such a man. The most that can be claimed then, is, that the answers of the juror misled the counsel by their falsehood. It is not necessary to inquire whether that would be a good cause for a new trial, because we are not convinced that the facts stated show even an intimate acquaintance with the plaintiff on the part of the juror. It is shown that he frequented the saloon of the plaintiff as often as once a week; had been seen to drink there, and with plaintiff; and had played cards in the same company; and these acts had continued for a year or more before the trial. Now all these facts hardly show an intimate acquaintance. Certainly the facts may exist without any intimacy. Again, what constitutes intimate acquaintance is not so clearly defined in men's minds that the juror might not truthfully say that he had no intimate acquaintance with the plaintiff, even if counsel should think otherwise on the same facts. We cannot say from the record that the juror answered untruthfully, and so all semblance of error on this point vanishes. The motion for a new trial was properly overruled. The judgment is affirmed.

All the Justices concurring.