No. 40,359

J. G. WITMER, *Appellant,* v. The Estate of Frank C. Brosius, Deceased (JOHN R. BARRIER, Administrator), *Appellee.*

(310 P. 2d 937)

Opinion filed May 11, 1957.

*James W. Sargent,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden* and *J. Francis Hesse,* all of Wichita, were with him on the briefs for the appellant.

*Richard Jones,* of Wichita, argued the cause, and *A. W. Hershberger, J. B. Patterson, William P. Thompson, Jerome E. Jones* and *William E. Palmer,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was a petition for the allowance of a demand filed in the probate court of Sedgwick county by J. G. Witmer, plaintiff (appellant), in the estate of Frank C. Brosius, deceased, defendant (appellee), for money allegedly deposited with decedent as a down payment on residential property to be constructed by O. A. Zimmerman, a building contractor. Thereafter, pursuant to G. S. 1955 Supp., 59-2402a, the cause was transferred to the district court, where issues were joined for trial. From an order of the trial court sustaining a demurrer to plaintiff's evidence, he appeals.

Omitting the formal parts, the petition, insofar as is pertinent, alleged that on October 9, 1951, plaintiff entered into an oral contract with O. A. Zimmerman, contractor, by the terms of which Zimmerman and decedent were to build a duplex for plaintiff, the particular one to be selected later. On the same day, plaintiff wrote a check for $9500.00 payable to O. A. and Paul Zimmerman, and on the face of it he wrote "Payment on Duplex." This check was endorsed by the Zimmermans, turned over to decedent, endorsed by him and deposited to his personal account. After the death of decedent, no duplex having been built for plaintiff, he and O. A.

Zimmerman agreed on the substitution of a four-plex. They then went to decedent's office and talked to Jack Frost, the accountant, requesting that plaintiff be given a credit of $9500.00 for a down payment on a four-plex. Frost denied that there was any record of the earlier transaction in the office. Plaintiff demanded that either the oral building contract be performed or his money be returned to him. Neither was done, and plaintiff claimed the estate owed him the $9500.00, plus interest from October 9, 1951.

Defendant, by answer, denied that O. A. Zimmerman was at any time the agent of decedent; that the only financial relationship existing between Zimmerman and decedent was that of mortgagee-mortgagor, creditor-debtor; that Zimmerman would execute to decedent various real property mortgages for "construction money." When the buildings were completed and sold and decedent paid the principal and accrued interest, he then released the mortgages so that Zimmerman could deliver merchantable titles to the buyers. On September 28, 1951, Zimmerman purchased from Rogers-Emrich Lumber and Supply Company, Inc., certain Eastwood Village lots and a warranty deed was executed by the company to Zimmerman and his wife. On October 9, 1951, decedent paid $9,486.95 to Rogers-Emrich by check, noting on its face, "W/D to Oswald Zimmerman, Eastwood Village Lots," and debited Zimmerman's account with $9,486.95. On October 11, 1951, Zimmerman presented to decedent plaintiff's $9500.00 check, which defendant alleged paid the above loan, and this $9500.00 was credited to Zimmerman's account by cash receipt ticket. Subsequently, construction money (secured by mortgages) was loaned to Zimmerman by decedent; the duplexes were built and sold, decedent receiving from the sale proceeds the principal and accrued interest set out in said mortgages; decedent then released the mortgages and all in excess was retained by Zimmerman. Plaintiff's reply was a general denial.

A consideration of defendant's demurrer requires a review of the evidence to determine whether it was sufficient to make out a prima facie case against defendant. The evidence most favorable to the plaintiff may be summarized as follows:

For many years prior to his death on November 5, 1952, Frank C. Brosius was engaged in the mortgage loan business and frequently loaned to O. A. Zimmerman "construction money"; and in such instances took as security a mortgage upon the property. After construction and when the property was sold by the builder—the

transactions being usually closed in Brosius' office—he would re-tain the amount of his construction loan, plus costs, and release his mortgage.

For a number of years, O. A. Zimmerman had been engaged in the business of constructing residential property, having numerous building transactions with and obtaining construction money from decedent on some sixty different properties. On September 28, 1951, Zimmerman purchased certain lots near Oliver and Morris Streets in Wichita from Rogers-Emrich Lumber and Supply Company, Inc., with a down payment of $1000.00. On October 9, 1951, decedent issued his check to Rogers-Emrich for $9486.95—the balance of the purchase price of the mentioned lots—and a warranty deed was executed to Zimmerman. Thereafter, Zimmerman told plaintiff he intended building several duplexes on the mentioned lots and plaintiff's payment of $9500.00 would be credited to Zimmerman's account in decedent's office as a down payment on a duplex to be constructed on these lots, and that plaintiff could select his duplex later.

It was testified that plaintiff discussed the matter with his wife and as a result of this conversation, on October 9, 1951, he delivered to Zimmerman his check in the amount of $9500.00 made payable to "O. A. and Paul Zimmerman," which bore the notation "Payment on Duplex." The Zimmermans, after endorsing plaintiff's check, took it to decedent's office, where it was received and endorsed by him and deposited to his personal account. Decedent, at the time he received the $9500.00 check, issued his cash receipt voucher show-ing:

"Date Rec.   10/11/51                          Folio No.   CR 256
Name    O. A. Zimmerman
        J. G. Witmer    CK                         9500.00
   CK   Rogers-Emrich Lbr. Co. For W/D
Customer Accounts                                 $9486.95
Other Receipts                                       13.05
                                          _____
                              Total       $9500.00"

Subsequently, plaintiff, while working as a carpenter on some four-plexes, told Zimmerman that he would rather have a four-plex than a duplex. In November, 1952, shortly after decedent's death, plaintiff and Zimmerman went to decedent's office, where they met Mr. George Brosius and a Mr. Frost, who were in charge of de-cedent's affairs. Plaintiff told them he wanted a certain four-plex,

inasmuch as he had paid $9500.00 down on a duplex. They informed him that they had no record of plaintiff having paid any sum on either a duplex or a four-plex, but suggested making a smaller allowance of $2000.00 or $3000.00 to him if he would go ahead with a contract of purchase.

O. A. Zimmerman testified that he had been in the contracting business for fifteen years and had built about sixty properties upon which he had obtained construction money from decedent; and that he was advised by decedent to get down payments on property because construction loans did not go far enough in the construction business. Zimmerman told plaintiff he would like to build him a duplex in the area of Oliver and Morris Streets, that he could use money in helping with the purchase of the lots and the money could be used as a down payment on a duplex in that area. Plaintiff brought Zimmerman a check for $9500.00; he told plaintiff he would take the check to decedent and it would be a down payment on a duplex; and he did then take it to decedent. He further testified that a few days prior to accepting plaintiff's check he had a conversation with Frank C. Brosius and stated:

"I told Frank [Brosius] we were working on Mr. Witmer [plaintiff] to buy a duplex, make a down payment on one, and said that we would try to get a down payment that is more than required and then the balance would be made to a loan. Brosius told me that was fine and he said 'If you can get a large down payment that helps out with our business here as far as having construction money available.' A few days after I received the check from Witmer, I took it up to Brosius' office. After I turned it in, Frank said that it was a nice deal and we needed a lot more of those kind of deals and that if we could get 'down' money on property and bring it up here it just makes it that much easier for us to operate. I don't remember now whether I gave Witmer's check to Frank or to the office. I turned it in to the office but I don't remember to whom I gave it."

He further testified that in the fall of 1951 they started three four-family apartments; that plaintiff decided he would rather have a four-family unit that a duplex; that he told decedent plaintiff did not want a duplex—he wanted a four-plex—and all of the duplexes would be for sale. Decedent offered no objections.

The record discloses that after the lots at Oliver and Morris had been purchased, decedent loaned the construction money to Zimmerman for the building of six duplexes and took mortgages to secure the loans. After plaintiff decided he wanted a four-plex instead of one of the duplexes, the six duplexes were sold and warranty deeds were executed by Zimmerman to the respective

purchasers—the transactions being closed in decedent's office. Decedent deducted the amounts of the construction loans from the sale prices and other expenses and held in his hands at the time of his death the difference between his loans and the sale prices in the sum of $11,895.25. No accounting was made to either Zimmerman or plaintiff prior to the death of decedent; and subsequent thereto and on February 1, 1953, the defendant estate charged the mentioned profit to Zimmerman's indebtedness to the estate.

The evidence of Mr. Webster, a certified public accountant, was to the effect that plaintiff had received no benefit from the $9500.00 check given Zimmerman, delivered to decedent in his lifetime, endorsed by him and deposited to his personal account. The accountant further testified that due to the sale of the six duplexes the assets of decedent's estate were augmented to the extent of plaintiff's $9500.00 previously deposited as a down payment on a duplex.

No useful purpose would be served by narrating the voluminous evidence pertaining to building transactions had between Zimmerman and decedent. Suffice it to say that it had been the custom for Zimmerman to secure down payments from individuals for the construction of residential property and that apparently such payments were delivered to decedent to supplement construction loans. It was further disclosed that decedent had no complete bookkeeping system; that many of the transactions were carried in his head.

Summarizing the evidence, Zimmerman made a down payment of $1000.00 on seven lots and then told decedent he could get a down payment on a duplex from plaintiff if they would construct a duplex for him on the mentioned lots; decedent paid the balance due on the purchase price of the lots and had the deed issued to Zimmerman; Zimmerman then contacted plaintiff, secured his check for $9500.00—marked "Payment on Duplex"—and delivered the check to decedent, who deposited it to his personal account and credited Zimmerman's account with the balance of the purchase price he had advanced on the lots. Decedent was advised by Zimmerman of his entire transaction with plaintiff. Plaintiff was to choose one of the duplexes on the mentioned lots when they were completed. In the interim, plaintiff decided he preferred a fourplex. Zimmerman advised decedent to that effect and told him that the duplexes would all be for sale. They were sold to respective purchasers, the sale transactions being completed in decedent's office; and the entire amount was deposited in decedent's account. After deducting his costs and construction loans on the duplexes, de-

cedent had a net profit left from the transaction which exceeded plaintiff's $9500.00 that had been used by decedent to pay the balance of the purchase price of the lots upon which the duplexes were constructed. At the time of the death of decedent he had made no accounting to either plaintiff or Zimmerman, nor had he credited Zimmerman's account with the profits from the sale of the duplexes. Three months after the death of decedent, representatives of the estate credited $11,895.25 profit from the sale of the duplexes to an alleged obligation owed by Zimmerman to the estate, thereby augmenting the estate in that amount.

Giving the plaintiff's evidence the benefit of all inferences to which it is entitled, we are of the opinion that it was sufficient to make out a prima facie case against defendant estate and that the trial court erred in sustaining a demurrer thereto.

It follows that the judgment of the trial court is reversed and the case is remanded for a new trial.

It is so ordered.