No. 40,637

James Coleman, *Appellee*, v. S. Patti Construction Company, *Appellant*.

(318 P. 2d 1028)

Opinion filed December 7, 1957.

*Blake A. Williamson*, of Kansas City, argued the cause and *James K. Cubbison, Lee Vaughan, Donald A. Hardy*, and *A. C. Cooke*, all of Kansas City, were with him on the briefs for the appellant.

*Charles S. Schnider,* of Kansas City, argued the cause and *Joseph Cohen, John E. Shamberg, Thomas E. Joyce, Joseph P. Jenkins, Albert M. Ross, Norma Braly, Harold K. Wells, Barton P. Cohen, Arthur J. Stanley, Jr., J. E. Schroeder, Lee E. Weeks, Leonard O. Thomas,* and *Richard Milsap,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HALL, J.: This is an appeal from a verdict and judgment in a common law third party liability action instituted under G. S. 1949, 44-504.

The Board of Public Utilities of the city of Kansas City, Kansas, was engaged in the erection of a new power station in the city.

Defendant and appellant, S. Patti Construction Company, was under direct contract with the Board of Public Utilities to erect the superstructure, including the steel framework of the building.

The Boese-Hilburn Electric Company was under direct contract with the Board of Public Utilities to install the electrical wiring in the building. The plaintiff and appellee, James Coleman, was an employee of Boese-Hilburn Electric Company.

No relationship of primary contractor and subcontractor existed in this controversy between Boese-Hilburn Electric Company, plaintiff's employer, and the S. Patti Construction Company. That problem is not presented in this case.

By August 26, 1953, the steel framework had been erected and the concrete floor of the second story on the north side of the building had been poured. The high voltage electric switches and gear of the power plant was to occupy that section of the building. The installation of this electrical equipment was part of the Boese-Hilburn Electric Company's contract. The switch gear was encased in large metal lockers called "cubicles" by the industry. These lockers were approximately 11 feet 4 inches in height, 7 inches deep and of various widths, some as narrow as 20 inches. They each weighed approximately 4,000 pounds.

In order to install this equipment Boese-Hilburn Electric Company found it necessary to remove a part of the steel framework on the second floor. The following plan of procedure was worked out for the delivery and installation of the cubicles:

The cubicles would be delivered to the job on trucks. A crane would lift them one at a time from the trucks to a position above the roof on the north section and then lower them through the steel framework of the second floor ceiling on to the concrete floor. On

account of the size of the cubicles it was necessary that a larger opening be made in the steel framework. This could be accomplished by removing a steel I-beam from the framework.

It is at this point in the lawsuit that the facts become seriously disputed. Boese-Hilburn Electric Company contends that it employed and later paid the S. Patti Construction Company to remove the I-beam and to replace it after the delivery of the cubicles to the second floor, and thus pleads in its petition and gave evidence that the two employees, Charles Pestock and George Riley, who actually removed and replaced the beam, were S. Patti Construction Company employees at all times.

This fact was disputed vigorously at the trial by the S. Patti Construction Company who contended that the Boese-Hilburn Electric Company made the two employees their special employees for this job. Of course, if they were the special employees of Boese, Patti could not be held for their negligence.

In either event, the employees, Pestock and Riley, removed the I-beam which was 20 feet long, 12 inches high and with a 4 inch flange, weighing 400 pounds more or less. They moved it about 8 feet to one side and set it down on the flange parallel to and directly on top of a larger beam on the same level about 17 feet above the concrete floor. The removal of this beam made a square opening through which the cubicles were lowered.

This beam was removed on the morning of August 26th and during the day the Boese-Hilburn Electric Company placed the cubicles on the concrete floor.

Between 3:00 and 4:00 o'clock p. m. of that day the appellee, James Coleman, was helping his employer Boese-Hilburn Electric Company secure the cubicles so they would not fall over or be disturbed during the night. In doing this Coleman and another employee were directed to climb up a ladder onto a cubicle, fasten one end of a rope to a metal ear on one corner of the cubicle, throw the rope over the steel framework above, and tie the other end of the rope to another ear on the cubicle. A particular cubicle was standing generally beneath the I-beam which had been removed and placed on top of another beam by Pestock and Riley. Coleman attempted to throw the rope from this cubicle over the unsecured beam. He grabbed the unsecured beam and it fell upon him knocking him off the cubicle and onto the concrete floor some 11 feet below. As a result of the fall he suffered a broken leg and other injuries.

Coleman was paid workmen's compensation benefits by Boese-Hilburn Electric Company to which he was entitled. This suit is brought against S. Patti Construction Company under G. S. 1949, 44-504 on the theory of third party negligence.

The trial resulted in a verdict for the appellee in the sum of $25,000.00. The trial court ordered a remittitur of $5,000.00 and entered judgment for $20,000.00 against appellant S. Patti Construction Company.

Appellant makes five specifications of error. They are:

"1. In overruling defendants' demurrer to plaintiff's evidence.

"2. In overruling defendants' motion to strike certain special findings.

"3. In overruling appellants' motion for judgment notwithstanding the verdict.

"4. In overruling defendants' motion for new trial.

"5. In allowing judgment in the sum of $20,000.00 for plaintiff and against the defendant."

At the close of appellee's case the appellant demurred to the evidence. Counsel for appellant stated:

"Mr. Williamson: At this time the defendant, the Patti Construction Company, defendant herein, demurs to the evidence of the plaintiff for the reason that they have not produced any evidence sufficient to constitute any cause of action in favor of the plaintiff and against the defendant. That under the evidence as produced, the evidence conclusively shows that the two men against whom the particular act of negligence are charged were under the direct supervision and direction of the superintendent for the Boese-Hilburn Electric Company, contributing their services for the exclusive use and benefit of the Boese-Hilburn Electric Company under its contract; that no subcontract was shown with the Boese-Hilburn Electric Company; that in fact, on the contrary they have shown that Boese-Hilburn paid the hour wages, the social security and the compensation upon these employees at the time they were employed upon this job and for the work and in the interest of the Boese-Hilburn contract; and nowhere in the evidence have they shown either that Boese-Hilburn or either of the two men charged with the alleged negligence at any time were doing any work that inured to the benefit of the Patti Construction Company on the work pertaining to the superstructure of this building.

"Mr. Schnider: If your Honor please, we argued this matter before at some length and produced decisions in the cases, and it is the same evidence. I would be happy to go over it again if you wish.

"The Court: I am not looking for work. I think the evidence should go to the jury. Overruled."

At the trial and on this appeal appellant cites numerous authorities to support his contention that the evidence of the appellee made the two iron workers special employees of Boese-Hilburn Electric Company as a matter of law. (*Phillips v. Armour & Co.*, 108 Kan.

596, 196 Pac. 245; *Baker v. Petroleum Co.,* 111 Kan. 555, 207 Pac. 789; *Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P. 2d 868; *Moseman v. Penwell Undertaking Co.,* 151 Kan. 610, 100 P. 2d 669; *Bell v. Hall Lithographing Co.,* 154 Kan. 660, 121 P. 2d 281; *Schroeder v. American Nat'l Bank,* 154 Kan. 721, 121 P. 2d 186; *Sims v. Dietrich,* 155 Kan. 310, 124 P. 2d 507; 56 C. J. S. Master and Servant § 330, p. 1093; *Judson & Little v. Tucker,* 156 S. W. 225; *Western Marine & Salvage Co. v. Ball,* 37 F. 2d 1004; NACCA Law Journal for May, 1957.)

In the alternative appellant argues here on the demurrer that if the iron workers were the sole employees of S. Patti Construction Company then the work of removing the I-beam had been completed and responsibility, if any, of Patti to Coleman, had expired hours before the happening occurred, citing *Engler v. Aldridge,* 147 Kan. 43, 75 P. 2d 290; *Howard v. Reinhart & Donovan Co.,* 196 Okla. 506, 166 P. 2d 101.

Appellant also contends Coleman was a mere licensee and assumed the risk of the conditions of the premises.

We have examined appellant's authorities very carefully. They do not support his contention. We have no quarrel with the law of these cases but in applying it to the evidence of appellant on demurrer we must agree with the court below that it was sufficient to show the two employees were employed by Patti at all times and that the final determination of this fact was for the jury.

Appellee cites authorities to the contrary. (*Davison v. Eby Construction Co.,* 169 Kan. 256, 218 P. 2d 219; *Waterbury v. Riss & Company,* 169 Kan. 271, 219 P. 2d 673; *Beitz v. Hereford,* 169 Kan. 556, 220 P. 2d 135; *Jones v. Winn,* 179 Kan. 587, 297 P. 2d 199; *Robinson v. Muller,* 181 Kan. 150, 309 P. 2d 651.)

In the Beitz case the court said:

". . . Where a reasonable doubt exists relative to whose servant or employee a person is the question should be submitted to the jury under proper instructions. . . ." (p. 561.)

Upon a demurrer to the evidence this court is called upon to review only the sufficiency of plaintiff's evidence and not to weigh the evidence for the purpose of rendering a decision on the merits of the action, and this same duty was incumbent upon the trial court. The rule is so well established in this and other jurisdictions that it should not be necessary to reiterate that in testing the sufficiency of evidence as against a demurrer, the court shall consider all of

plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between his direct and cross-examination, and give the evidence of plaintiff a liberal construction resolving all doubt against defendant and, if so considered, there is any evidence which supports or tends to support plaintiff's case on any theory, the demurrer shall be overruled. A few of our more recent cases adhering to this rule are: *In re Estate of Dieter*, 172 Kan. 359, 239 P. 2d 954; *Staab v. Staab*, 160 Kan. 417, 163 P. 2d 418; *Palmer v. The Land & Power Co.*, 172 Kan. 231, 239 P. 2d 960; *McCracken v. Stewart*, 170 Kan. 129, 223 P. 2d 963; *Fry v. Cadle*, 171 Kan. 14, 229 P. 2d 724; *Blankenship v. Fraker*, 173 Kan. 438, 439, 249 P. 2d 683; *Revell v. Bennett*, 162 Kan. 345, 176 P. 2d 538; *Huggins v. Kansas Power and Light Co.*, 164 Kan. 27, 187 P. 2d 491; *Gabel v. Hanby*, 165 Kan. 116, 193 P. 2d 239; *Samms v. Regier*, 167 Kan. 556, 207 P. 2d 414; *Hukle v. Kimble*, 169 Kan. 438, 441, 219 P. 2d 434; *Schneider v. Stewart*, 170 Kan. 158, 163, 223 P. 2d 698; *Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909; *Siegrist v. Wheeler*, 175 Kan. 11, 259 P. 2d 223; *Messinger v. Fulton*, 173 Kan. 851, 252 P. 2d 904; *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 53 P. 2d 923; *Worrell v. West*, 179 Kan. 467, 296 P. 2d 1092; *Noel v. Menninger Foundation*, 180 Kan. 23, 299 P. 2d 38; *Jones v. Winn*, supra; *Harvey v. Palmer*, 179 Kan. 472, 296 P. 2d 1053; *Brent v. McDonald*, 180 Kan. 142, 300 P. 2d 396; *Cosby v. Doskocil*, 180 Kan. 367, 303 P. 2d 1107; *Koch v. Suttle*, 180 Kan. 603, 306 P. 2d 123; *Boggs v. City of Augusta*, 180 Kan. 831, 308 P. 2d 72; *Jameson v. Farmers Mutual Automobile Ins. Co.*, 181 Kan. 120, 309 P. 2d 394; *Haga v. Moss, Administrator*, 181 Kan. 171, 311 P. 2d 281; *Witmer v. Estate of Brosius*, 181 Kan. 200, 310 P. 2d 937; *Hamilton v. Ferguson*, 181 Kan. 474, 312 P. 2d 232. Other cases holding to the same effect may be found in 5 Hatcher's Kansas Digest [Rev. Ed.], Trial, § 151, and West's Kansas Digest, Trial, § 156 (2) and (3).

Since the appellant did not stand on his demurrer in making a review of the evidence appellee is entitled to rely on another well settled rule. When a defendant does not stand upon his demurrer to the plaintiff's evidence, and thereafter competent evidence in the case supplies the deficiency which may have heretofore existed in such evidence, any error in the overruling of the demurrer is cured and becomes immaterial. (*Henks v. Panning*, 175 Kan. 424, 264

P.•2d 483; *Tuggle v. Cathers,* 174 Kan. 122, 254 P. 2d 807; *Lech-leitner v. Cummings,* 159 Kan. 171, 152 P. 2d 843, and numerous other decisions cited in West's Kansas Digest, Trial, § 418; 5 Hatcher's Kansas Digest [Rev. Ed], Trial, § 167; 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 486; *Emmerich v. Kansas City Public Service Co.,* 177 Kan. 443, 280 P. 2d 615; *Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899; *Gartner v. Missimer,* 178 Kan. 566, 290 P. 2d 827.)

To say after appellant's evidence the questions of fact could be settled as a matter of law and that there were none on which reasonable minds would differ is simply to ignore the obvious.

The record on review is voluminous. We have reviewed it meticulously. It is not necessary to burden this opinion with the detailed account of it. The evidence covers the points raised in appellant's demurrer, particularly the testimony of Ralph F. Reynolds the general foreman of Boese-Hilburn Electric Company who appellant concedes is the principal witness in the lawsuit. He testified:

"Now, in my capacity as general foreman, I contemplated or saw that some of that steel was going to have to be moved before these cubicles could be unloaded. I contacted Patti's man to have the iron work removed; gave him a work order. I contacted Patti's man, whose name is Howard Painter. . . . I told Howard Painter I would like to have him get his iron workers to remove three pieces up there for us, i. e., three pieces of steel. . . .

". . . My purpose in asking them to remove the iron was because it was iron worker's work and I had no iron workers working for me on the job. Boese-Hilburn was an electrical contractor and all I had working for me on the job was electricians. . . . My company had nothing to do with the iron work—erecting it or putting it in place. After I talked to Painter, he sent Bill Bergmann, the Iron worker foreman, around to me. I had a conversation with Bill Bergmann. I told him—showed him the pieces I wanted removed. . . . I was not present when they were moved. I just told Painter and Bergmann what I wanted removed and then they could replace them when they (we) got through. I did not tell them how to remove them. I was not there when they were moved, and I did not see them moved. I first ascertained that they were moved when I came back and the hole was open that I wanted open. . . .

"In other words, when I wanted this work done, I first go to the superintendent—that was Painter—to tell him what I wanted; and after the work is done, the time is determined on it, they come up with a work order and I sign it. . . ."

Plaintiff's exhibits 7a, 7b, 7c and 7d, the payroll checks of the S. Patti Construction Company to Pestock and Riley, indicates they were paid directly by S. Patti Construction Company for the work

in removing the I-beam. Other evidence shows Boese-Hilburn Electric Company later reimbursed S. Patti Construction Company for the extra work.

Under the evidence as it is considered on demurrer appellant's alternative arguments that if the workers were the sole employees of S. Patti Construction Company the responsibility of Patti, if any, was limited to the time of the accident, and that the appellee was a mere licensee who assumed the risk of the condition of the premises are also without substantial merit.

All inferences in the evidence must be weighed in appellee's favor. We have concluded the lower court was correct in over-ruling appellant's demurrer to the evidence.

Appellant also specifies as error the overruling of his motion for new trial. More specifically, appellant states the court abused its discretion in its oral admonitions to the jury during deliberation.

The jury started its deliberation on Tuesday, December 11, 1956. It deliberated that day and all day Wednesday. At 4:30 p. m., Wednesday, December 12 the jury was called into court and the following proceeding occurred:

"The Court: Have the jury agreed upon a verdict?
"The Foreman: We have not, your Honor.
"The Court: Are you making any progress?
"The Foreman: We don't seem to be.
"The Court: What do you suppose you are here for? You are here to settle these disputes. That is what the jury is for. Pass up the papers, please. You will be excused until tomorrow morning at half past nine o'clock with the usual admonition. Come back tomorrow morning at 9:30."

At 9:30 a. m., Thursday, December 13, 1956, the following proceeding occurred:

"The Court: Well, you heard the evidence; it is up to you to find an answer. You ought to know by this time; you have been talking about it for two days. Of course, the Court cannot answer these questions for you; if I could I would answer them mighty quickly. It is important, of course, that we have a verdict in this case. It has been tried before and it costs the County a lot of money to try these cases. But that is not the main thing: the main thing is that this right of trial by jury is a sacred right of the American people and other civilized governments. The people of the world have fought and died for the right of trial by jury. The purpose of that was to allow people to settle disputes among them without having some lord or baron or judge or someone else take it away and decide it for them. Here you are in that position, to exercise that sacred right. Of course, we cannot make you agree; but I am just trying to impress upon you the importance of deciding these cases. If you don't decide it, some other jury will have to, of course, or try to. And

if it continues indefinitely that they cannot be decided, it will never be adjusted. So you can see your situation is not impossible or anything of that kind; but it is just up to you whether we should dump this case in the trash pile and consider it impossible to try it by the people and let it go untried.

"I am going to submit it to you again and trust that you will make a desperate effort to see if you can't get together in the case. It is very important. These cases have got to be tried, and the jury is the ones who have to settle them. You may now retire and deliberate further."

At 2:00 p. m. on Thursday, December 13, 1956, the following proceeding occurred:

"The Court: Members of the Jury, is there anything we can do for you in the way of reading testimony or anything of that sort? I am going to send you out again. I want you to keep this in mind: This is the only way this case can be settled and determined—by a jury. This jury can decide it as well as any other jury. If you will get down to brass tacks and go over this case again, I am sure you can reach a verdict. Unless you are opposing it for some outside reason. You should be governed by the testimony and the instructions of the Court."

At 3:20 p. m., Thursday, December 13th the jury agreed upon a verdict and were discharged by the court.

The record does not indicate whether appellant objected to the court's admonitions at the time they were given. They are presented here under the motion for new trial.

The matter of coercive instructions and statements by the court has been thoroughly considered in previous cases. The cases divide themselves generally into three categories.

The first will be found those about which there can be little doubt the instruction or statement given was coercive, examples being: *Neely v. Travelers Ins. Co.*, 141 Kan. 691, 693, 42 P. 2d 957; *State v. Beacon Publishing Co.*, 141 Kan. 734, 744, 42 P. 2d 960; *Moore v. Owens*, 143 Kan. 620, 56 P. 2d 86; *Eikmeier v. Bennett*, 143 Kan. 888, 57 P. 2d 87.

The second will be found those where the remarks of the trial court, or its instructions, have been so mild or have been made or given under such circumstances that the court decided they did not warrant reversal. (*Pacific Railroad Co. v. Nash*, 7 Kan. 280; *Moore v. Cass*, 10 Kan. 288; *State v. Garrett*, 57 Kan. 132, 45 Pac. 93; *Karner v. Railroad Company*, 82 Kan. 842, 109 Pac. 676.)

The third class are those where it was contended the remarks or instructions threatened to hold the jury until an agreement was reached. (*Sibley v. Cotton-mills Co.*, 85 Kan. 256, 116 Pac. 889; *Brecheisen v. Clark*, 103 Kan. 662, 176 Pac. 137; *Alcorn v. Cudahy Packing Co.*, 125 Kan. 493, 264 Pac. 741.)

The cases cited are not intended to be exhaustive, but generally illustrative of the three classifications.

See, also, the annotations in 109 A. L. R. 72; and 19 A. L. R. 2d 1257.

A comparison of the remarks of the court here with these cases brings them well within the category of being coercive.

A leading case is *Neely v. Travelers Ins. Co.*, supra. The opinion reviewed the early Kansas cases in holding the remarks of the court coercive and reversible, the court said:

"The foregoing are the only decisions of this court called to its attention, and they are sufficient. None of them justifies the bludgeoning administered to the jurors in this case who were reluctant to agree. None but a juror of exceptional strength of mind and character would dare face the obloquy threatened by the court, if he stood out. The lone juror, or small minority of jurors, possessing courage to obey the juryman's oath and to withstand dragooning, is the bulwark in the jury system against mob verdicts." (p. 696.)

In *Moore v. Owens*, supra, the court held:

"An oral instruction given a jury during its deliberations and after the court had learned from the jury that it stood eleven to one, urging the jury to get together and criticising the one juror for the position he was taking, although he was not named or designated in any way, was plainly coercive and erroneous." (Syl. 1.)

The remarks of the court gave the jury no alternative but to return some kind of a verdict or risk the wrath of the court.

Appellee raises the point that appellant made no timely objection. In *Moore v. Owens*, supra, the court indicated that timely objection must be made to the instruction or statement so as to give the court an opportunity to correct the error, if any, in making the statement.

This rule is not mandatory in all cases and is seldom applied. *Neely v. Travelers Ins. Co.*, supra; *State v. Beacon Publishing Co.*, supra; *Eikmeier v. Bennett*, supra.) Many times counsel does not have adequate opportunity to state his objections.

Upon appellate review whenever the record of the remarks or instructions of the court to a jury are plainly coercive, as they are here, or tend to be coercive and as such are prejudicial, this court will not hesitate to declare such conduct an abuse of discretion and order a new trial.

No useful purpose would be served in considering the remaining specifications of error in this appeal.

The judgment of the trial court is reversed and the cause is remanded with directions to sustain the motion of defendant for a new trial.