No. 44,704

THE STATE OF KANSAS, *Appellee*, v. JOHN D. EARSERY, *Appellant*.

(428 P. 2d 794)

Opinion filed June 10, 1967.

*M. William Syrios,* of Wichita, argued the cause and was on the brief for the appellant.

*R. K. Hollingsworth,* Deputy County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, John D. Earsery, was convicted of first degree robbery and sentenced to a term in the state penitentiary. He has appealed from that judgment.

Five grounds of error are specified. We shall confine our discussion, however, to the specification dealing with the alleged coercion of the jury, which we believe is decisive of this appeal.

To silhouette the question properly, a chronological outline must be drawn. Trial of the lawsuit commenced on January 11, 1966, and continued all day. The jury received the case at 10:40 the next morning, January 12, and deliberated the balance of that day, during which time they sent three notes to the court:

"Sir: Is the statement of Mrs. Adamson that the defendant was the assailant in this case sufficient identification?"

"Your Honor: Some of the jury believe there is insufficient evidence for a conclusion in this case. What is our next step?"

"May we have a copy of the testimony? There are questions in the area of Mrs. Adamson's testimony concerning the choosing of the 'mug shot' of the defendant and her answers to State and Defense questions of whether she had seen the defendant prior to the commission of the crime."

After the night recess the jury reassembled at 10:00 a. m. on January 13, at which time portions of Mrs. Adamson's testimony were read. The court then spoke thusly: "All right. While you are out here, I would like to chat with you just a moment." and proceeded to read the following instruction:

"This case has been exhaustively and carefully tried by both sides, and at considerable expense, and has been submitted to you for decision and verdict. Although under the law a verdict must be unanimous and should be based upon honest judgment, not mere acquiescence for the sake of expediencey, it is still necessary that you examine the matters submitted to you with the proper regard for, and deference to, the opinion of each other. A proper regard for the judgment of each other should help you greatly in forming your own judgment.

"There is no reason to think that a jury better qualified than you would ever be chosen to try this case. Therefore, each of you should listen to the arguments of the others with an open-mindedness characteristic of a disposition to be convinced by them; and if you differ in your views of the evidence, you should all be led by such differences of opinion to scrutinize the evidence more closely and to re-examine more carefully the grounds of your opinion.

"You should, after all, decide the issues of fact which have been submitted to you. In conferring you should lay aside all mere pride of opinion and you should bear in mind that the jury room is no place for espousing and maintaining, in a spirit of controversy, either side of a cause. The aim to be kept in view

is the truth as it appears from the evidence, which evidence you must consider with the instruction of the Court.

"You will again retire to your jury room and examine your differences in a spirit of fairness and candor and try to arrive at a verdict."

After reading the foregoing written instruction, the court indulged in extemporaneous oral remarks substantially to this effect: that a great deal of expense has been borne by the state to assemble the trial, that the reporter has to be paid, the court has to be paid and the county attorney has to be paid; that defendant's financial position was such that he could not hire counsel at his own expense and the matter of paying court appointed counsel likewise should be considered; that "We have to consider likewise the expense of each of you, the Jurors."; that unless a verdict was reached the whole thing would have to be done all over again and the expenses which had mounted up to this point would have to be duplicated.

At the conclusion of the court's remarks, the jury retired at 10:20 a. m. to resume deliberations. Ten minutes later, at 10:30 a. m. a verdict of guilty was returned.

The defendant maintains that the court erred in giving the instruction above set out and in following that instruction with the remarks heretofore summarized; that the effect of the instruction and of the remarks was to coerce the jury and to prejudice his right to a fair trial; and that a new trial should be granted. We are in essential agreement with the defendant's position.

The subject of coercive or forcing instructions is not new in this jurisdiction. Numerous cases dealing with this issue are found among the decisions of this court, extending from the early cases of *Pacific Railroad Company v. Nash,* 7 Kan. 280 and *State v. Bybee,* 17 Kan. 462, to our most recent decision, *State v. Basker,* 198 Kan. 242, 424 P. 2d 535.

We believe that no good purpose would be served by citing all of our many decisions which bear upon the question, for it is difficult, if not impossible, to find two cases which are precisely alike. Courts have been ingenious in designing their instructions and in formulating their remarks to the end that some differences, even though slight, will be found to exist in the phraseology or emphasis employed.

Instructions challenged as coercive have been approved by this court in some instances, disapproved in others. Some language has been held to be prejudicial, other language has not. Reversible

error has been found in some cases, but not in others. Indeed, the adjudication of cases involving alleged coercion appears to have been largely on an *ad hoc* basis, although common to them all is the premise that the judgment of the individual juror is not to be subjected to the pressure of coercive or oppressive acts and statements on the part of the court, but is to be exercised free from judicial threat, harassment, constraint or compulsion. (See cases digested in 5 Hatcher's Kansas Digest (Rev. Ed.) Trial, §§ 181, 285; 2 Hatcher's Kansas Digest (Rev. Ed.) Criminal Law, § 160.)

Turning to the instant action, it is noted that the written instruction given the jury follows verbatim that which was prepared by the Committee on Pattern Jury Instructions of the Kansas District Judge's Association, which appears as PIK 10.20. The pattern instruction, in turn, is fashioned largely after the so-called "Allen" instruction, based on the holding in *Allen v. United States*, 164 U. S. 492, 41 L. Ed. 528, 17 S. Ct. 154.

In the recent case of *State v. Oswald*, 197 Kan. 251, 417 P. 2d 261, we approved the giving of an identical instruction under the circumstances which obtained in that case. But the court issued this *caveat*:

". . . However, as a word of caution, this instruction quite properly could have been given at the time of the original charge. If so given all question with regard to the coercive effect of the same would be removed. The practice of lecturing a jury in a criminal case after it has reported a failure to agree is not to be commended and under circumstances differing from the present case might well be held coercive and erroneous as invading the province of the jury." (p. 261.)

This language serves to emphasize what this court had to say in *State v. Hathaway*, 143 Kan. 605, 56 P. 2d 89:

". . . It is proper to say that such general observations touching the duty and responsibility of jurors, in our system of administrative justice, would better be given when the venire is first convened. . . . The wisdom of such a lecture on jurors' duties given in the middle of their deliberations in a particular case is not so clear." (p. 609.)

Our latest expression on the subject of coercive instructions is found in *State v. Basker*, supra. In that case the trial court did not give the PIK pattern instruction approved in *Oswald*, but engaged in a lengthy soliloquy containing a variety of improper observations and assertions. Although we said in the course of our opinion that the remarks of the court went beyond those used in *Oswald*, and that we could not put our stamp of approval upon them, we held

that under the attending circumstances of that case the instruction was not so clearly coercive as to result in reversible error.

We are not required to determine whether the PIK instruction read to the jury in this case would, standing alone, constitute prejudicial error under the conditions shown to be present here. The oral remarks of the trial court which followed the giving of the written instruction went far beyond the instruction in its emphasis upon the financial impact which a second trial would have on citizens of the community.

It is quite true that this court, on occasion, has upheld cases in which expense has been mentioned but in none of those cases was the language used so insistent, or the remarks so undisguisedly directed to human parsimony, as the remarks shown here. Moreover, the court misinformed the jury when it said that the matter of paying court-appointed counsel should be considered, as well as the expense of each of the jurors. The public expense incident to a trial is wholly extraneous to the deliberations of a jury.

We hold the court's remarks to be erroneous. Were they likewise prejudicial?

In posing this question, the court recognizes that not every error which occurs during the trial of a lawsuit approaches the gravity of prejudicial error and that it is only where error adversely affects some substantial right of a litigant that reversible error may be said to have been committed. (*State v. Engberg*, 194 Kan. 520, 400 P. 2d 701, cert. den., 383 U. S. 921, 15 L. Ed. 2d 676, 86 S. Ct. 899.) This principle has been applied to cases where instructions of a coercive character were given. (*State v. Pyle*, 143 Kan. 772, 57 P. 2d 93; *State v. Neff*, 169 Kan. 116, 218 P. 2d 248, cert. den., 340 U. S. 866, 95 L. Ed. 632, 71 S. Ct. 90.)

In determining whether a forcing instruction or coercive remarks amount to reversible error, the circumstances under which the same were made must be considered, and the probable impact of the instruction or remarks on the jury must be weighed in the light of the surrounding conditions. Considered in that context we have no hesitancy in concluding that the court's remarks in the present case were prejudicial.

It is clear from the notes which the jury sent to the court that some jurors were concerned over the sufficiency of the defendant's identification and that there were some jurors who thought the evidence insufficient to reach a verdict. This situation existed from

the time the jury received the case, at 10:40 a. m., until court was recessed that evening. It was only after the court had "'chatted" with the jury next morning about the cost of another trial that the jury, in the short space of ten minutes, returned a verdict of guilty. We would be naive to believe there was no connection between the court's dissertation on expense and the jury's hasty action thereafter.

We can readily understand the reluctance of a court to dismiss a jury which had failed to agree. Hung juries are, indeed, an abhorrence to a trial judge whose obligation it is to administer the affairs of his court with dispatch as well as with evenhanded justice. It is probable that no experience is more frustrating to a court than the retrial of somebody's lawsuit. The sensation is somewhat akin to dining on yesterday's cold mashed potatoes.

Nevertheless, it is not a part of the judicial function to invade the province of the jury by coercing the will or judgment of any juror. A litigant is entitled to the free and independent judgment of every juror, uncoerced by judicial authority. In *State v. Basker*, supra, the court's responsibility in this area was expressed in this way:

"It is the duty of a judge to guide the jury in its decision-making process by giving proper instructions. But he must never abuse this office by coercing the jury into making decisions it might not otherwise make." (p. 247.)

The state points out that no timely objection was made to the court's remarks, and so far as the record reveals, that is true. We may say here, however, that apparently no record was made of the court's remarks or of what transpired at that time. The remarks were reconstructed by defense counsel during his argument on the motion for new trial and, as so reproduced, were acknowledged by the court as essentially correct.

This is, at best, an unsatisfactory method of making and preserving a record. For the sake of everyone concerned, litigant, counsel, trial court, and this court as well, upon appeal, every communication between judge and jury should take place in the presence of and be recorded by the official court reporter.

But whether objection was made or not to the court's statements, and we must assume that none was made, we think it incumbent on us to consider them. This matter received attention in *Coleman v. Patti Construction Co.*, 182 Kan. 53, 318 P. 2d 1028, where we said:

"Appellee raises the point that appellant made no timely objection. In *Moore v. Owens*, supra, the court indicated that timely objection must be made to the

instruction or statement so as to give the court an opportunity to correct the error, if any, in making the statement.

"This rule is not mandatory in all cases and is seldom applied. (*Neely v. Travelers Ins. Co.,* supra; *State v. Beacon Publishing Co.,* supra; *Eikmeier v. Bennett,* supra.) Many times counsel does not have adequate opportunity to state his objections.

"Upon appellate review whenever the record of the remarks or instructions of the court to a jury are plainly coercive, as they are here, or tend to be coercive and as such are prejudicial, this court will not hesitate to declare such conduct an abuse of discretion and order a new trial." (p. 62.)

We believe the rule expounded in the *Coleman* case to be a salutary rule which is controlling here.

The judgment of the court below is reversed and this case is remanded with directions to set aside the verdict and to grant the defendant a new trial.